2007-1457

# NONCONFIDENTIAL
# BRIEF OF APPELLEE
# INTERNATIONAL TRADE COMMISSION

---

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

### EPISTAR CORPORATION,

Appellant,

v.

### INTERNATIONAL TRADE COMMISSION,

Appellee,

and

### PHILIPS LUMILEDS LIGHTING COMPANY, LLC,

Intervenor.

---

## ON APPEAL FROM THE UNITED STATES INTERNATIONAL
## TRADE COMMISSION IN INVESTIGATION NO. 337-TA-556.

---

CLINT A. GERDINE
Attorney for Appellee
Office of the General Counsel
U.S. International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436
Telephone (202) 708-2310

JAMES M. LYONS
General Counsel
Telephone (202) 205-3101

ANDREA C. CASSON
Assistant General
 Counsel for Litigation
Telephone (202) 205-3105

CONFIDENTIAL MATERIAL DELETED

Material has been deleted from pages 3, 5, 6, 7, 8, 14, 15, 20, 24, 25, 26, 28, 29, 30, 31, 33, and 34 of the Commission's nonconfidential brief because the material is deemed confidential business information pursuant to 19 U.S.C. § 1337(n); *see also* 19 C.F.R. § 210.5. The material omitted on those pages concerns details related to the structure of the respondent's accused products and details of the confidential settlement agreements between the complainant and the respondent.

## TABLE OF CONTENTS

PAGE

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    NATURE OF THE CASE AND PROCEDURAL BACKGROUND . . . . . 2

II.   STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    Relevant Prior Litigation and Merger . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    Background of Invention and Patent at Issue . . . . . . . . . . . . . . . . . . 10

      C.    Claims at Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      D.    Relevant Commission Findings . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            1.    Epistar's Bar to Asserting Invalidity of the '718 Patent . . . . 14

            2.    Claim Construction and Infringement . . . . . . . . . . . . . . . . . . 15

                  a.    "transparent window layer" . . . . . . . . . . . . . . . . . . . . . 16

                  b.    "substrate" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF CONTENTS CONT'D

SUMMARY OF THE ARGUMENT ................................. 20

ARGUMENT ...................................................... 23

I.    STANDARD OF REVIEW ..................................... 23

II.   THE COMMISSION CORRECTLY FOUND THAT EPISTAR
      WAS BARRED FROM ASSERTING INVALIDITY OF THE
      '718 PATENT ............................................... 24

      A.    The UEC-Lumileds Settlement/License Agreements Bar
            UEC and its Successors from Asserting Invalidity of the
            '718 Patent At Any Time in Any Dispute Concerning
            Any Products .......................................... 24

      B.    The Commission's Decision is Consistent with the
            Public Interest ........................................ 30

      C.    Epistar's "Pre-Merger" Distinction is Meaningless ............. 32

      D.    Epistar's Challenge to the Preclusion of its Invalidity Defense
            Can Be Dismissed as "Harmless Error" Since Epistar Presented,
            and the Commission Considered, All Evidence Relevant to the
            Asserted Invalidity Defense as Part of the Claim Construction
            Portion of the Investigation and the Commission Properly
            Construed the "Transparent Window Layer" Term as Not
            Excluding Use of ITO .................................. 36

III.  THE COMMISSION'S CONSTRUCTION OF THE CLAIM TERM
      "TRANSPARENT WINDOW LAYER" IS CORRECT .............. 39

      A.    The Commission Properly Construed the "Transparent Window
            Layer" Term as Not Excluding Use of ITO ................. 39

## TABLE OF CONTENTS CONT'D

B.    A *KSR* Analysis does not affect the ALJ's proper claim
      construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

IV.   THE COMMISSION CORRECTLY CONSTRUED THE
      "SUBSTRATE" TERM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

A.    The Claim Language, Specification, and Prosecution History
      Demonstrate the Correctness of the Commission's Claim
      Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

B.    Epistar's Argument that the "Substrate" is limited to a Single
      Layer is Unavailing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

## TABLE OF AUTHORITIES

### FEDERAL CASES

PAGE

*AbTox, Inc. v. Exitron Corp.*, 122 F.3d 1019 (Fed. Cir. 1997) . . . . . . . . . . . . . . 54

*Comark Communications v. Harris Corp.*, 156 F.3d 1182 (Fed. Cir. 1998)  . . . 53

*Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352 (Fed. Cir. 2003) . . . . . . . . 53

*Cornwall v. U.S. Manufacturing, Inc.*, 800 F.2d 250 (Fed. Cir. 1986)  . . . . . . . . 38

*Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350
(Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30, 34

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
849 F.2d 1430 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Finnigan Corp. v. International Trade Commission*, 180 F.3d 1354
(Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362 (Fed. Cir. 2001)  . . . . . . . . . 30, 31, 32

*Foster v. Hallco Mfg. Co.*, 947 F.2d 469 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . 30

*Graham v. John Deere Co.*, 383 U.S. 1 (1966) . . . . . . . . . . . . . . . . . . . . . . . 47, 48

*Haynes International, Inc. v. Jessop Steel Co.*, 8 F.3d 1573
(Fed. Cir. 1993), *clarified on reh'g,* 15 F.3d 1076 (Fed. Cir. 1994) . . . . . . . . . 24

*Hazani v. United States International Trade Commission*, 126 F.3d 1473
(Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hemstreet v. Spiegel, Inc.*, 851 F.2d 348 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . 30

## TABLE OF AUTHORITIES CONT'D

*In re Fulton*, 391 F.3d 1195 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351 (Fed. Cir. 2000) . . . . . . 54, 55

*KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444
(Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Koyo Seiko Co. Ltd. v. United States*, 95 F.3d 1094 (Fed. Cir. 1996) . . . . . . . . . 38

*KSR International Co. v. Teleflex, Inc*, 127 S. Ct. 1727 (2007) . . . . . . . . 46, 47, 48

*Lear, Inc. v. Adkins*, 395 U.S. 653 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861 (Fed. Cir. 1985) . . . . . . . . . . . 41, 50

*Lumileds Lighting U.S., LLC v. Epistar Corp.*, No. C 02-5077 and
C 03-1130 CW (PVT) (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967(Fed. Cir. 1995)
(en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc.*,
247 F.3d 44 (3rd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759 (1969) . . . . . . . . . . . . . . . . . 38, 39

*N.L.R.B. v. Am. Geri-Care, Inc.*, 697 F.2d 56 (2d Cir. 1982) . . . . . . . . . . . . 38, 39

*Nazomi Communications, Inc. v. ARM Holdings, PLC*, 403 F.3d 1364
(Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Omega Engineering, Inc.v. Raytek Corp.*, 334 F.3d 1314
(Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

## TABLE OF AUTHORITIES CONT'D

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) . . . . . . . . . . 40, 45, 53, 54

*Precise Exercise Equip., Inc. v. Kmart Corp.*,
2000 U.S. Dist. LEXIS 21498 (C.D. CA 2000) . . . . . . . . . . . . . . . . . . . . . . 29, 34

*Prima Tek II, L.L.C. v. Polypap S.A.R.L.*, 318 F.3d 1143 (Fed. Cir. 2003) . . . . . 40

*Sjolund v. Musland*, 847 F.2d 1573 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . 53

*Spindelfabrik Suessen-Schurr, Stahlecker & Grill GmbH
v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*,
829 F.2d 1075 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Studiengesellschaft Kohle M.B.H. v. Shell Oil Co.*, 112 F.3d 1561
(Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Texas Instruments v. U.S. International Trade Commission*, 988 F.2d 1165
(Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Texas Instruments, Inc. v. United States International Trade Commission*,
805 F.2d 1558 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*United Epitaxy Co., Ltd. v. Hewlett-Packard Co., Agilent Technologies, Inc.,
and Lumileds Lighting U.S., LLC*, No. C 00-2518 CW (PVT)
(N.D. Cal., filed Sept. 7, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Unova, Inc. v. Acer Inc.*, 363 F.3d 1278 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . 28

*Ventana Medical Systems, Inc. v. Biogenex Laboratories, Inc.*,
473 F.3d 1173 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) . . . . . . 39, 40

*W.E. Hall Co. v. Atlanta Corrugating, LLC*, 370 F.3d 1343 (Fed. Cir. 2004) . . . 40

## TABLE OF AUTHORITIES CONT'D

*ZapatA Indus., Inc. v. W.R. Grace & Co.-Conn.*, 51 U.S.P.Q.2d 1619
(S.D. Fla. Feb. 4, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## FEDERAL STATUTES

19 U.S.C. § 1337 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

35 U.S.C. § 103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

35 U.S.C. § 112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

## FEDERAL REGULATIONS

19 C.F.R. § 210.42(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

19 C.F.R. § 210.43 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## FEDERAL REGISTER NOTICE

72 *Fed. Reg.* 38101-2 (July 12, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## STATEMENT OF RELATED CASES

Counsel for defendant-intervenor Philips Lumileds Lighting Company LLC has indicated to counsel for the Commission that this appeal is or may be related to the following two district court actions:

- *Lumileds Lighting U.S., LLC v. Epistar Corporation*, Civil Action No. C-05-04521 CW (N.D. Cal. Nov. 4, 2005), presently stayed; and

- *Epistar Corporation v. Philips Lumileds Lighting Company, LLC*, Case No. C-07-05194 JF (N.D. Cal. Oct. 10, 2007), which reportedly involves the same settlement agreements discussed in the briefs in this appeal.

## STATEMENT OF THE ISSUES

The U.S. International Trade Commission ("the Commission") disagrees with Epistar Corporation's ("Epistar") framing of the issues, and believes the issues are properly presented as follows:

1) Whether the Commission correctly determined that Epistar was barred from asserting invalidity of U.S. Patent No. 5,008,718 ("the '718 patent").

2) Whether Epistar's argument that the Commission improperly barred the appellant from asserting invalidity can be dismissed as "harmless error" since Epistar presented, and the Commission considered, the identical evidence relevant to invalidity in addressing whether the prior art asserted by Epistar limited the scope of the asserted claims.

3) Whether, in light of the intrinsic evidence, the Commission correctly construed the "transparent window layer" term, as used in the asserted claims 1 and 6 of the '718 patent, as not excluding use of indium tin oxide ("ITO").

4) Whether, in light of the intrinsic evidence, the Commission correctly construed "substrate" to be the supporting material in an LED upon which the other layers of an LED are grown or to which those layers are attached, and to include the case in which the supporting material functioning as the substrate is grown on top of, or attached to, the other layers.

1

## STATEMENT OF THE CASE

## I.    NATURE OF THE CASE AND PROCEDURAL BACKGROUND

The Commission substantially agrees with Epistar's statement of the case

(Br. at 5-15), but provides some additional relevant background.  This appeal is

from the Commission's final determination in the investigation entitled *Certain

High-Brightness Light Emitting Diodes ("LEDs") and Products Containing Same*,

USITC Inv. No. 337-TA-556.  On December 8, 2005, the Commission instituted

the underlying investigation based on a complaint filed by Lumileds Lighting U.S.

LLC ("Lumileds") alleging a violation of section 337 of the Tariff Act of 1930, as

amended, in the importation into the United States, the sale for importation, and

the sale within the United States after importation of certain high-brightness LEDs

and products containing same by reason of infringement of claims 1 and 6 of the

'718 patent.[1]  The complaint originally named two respondents, United Epitaxy

Company ("UEC") and Epistar, but it was subsequently amended to reflect the

December 30, 2005, merger of the two named respondents into a sole company

owned and controlled by Epistar.  On May 15, 2006, the Commission determined

not to review an initial determination ("ID") issued by the presiding Commission

---

[1] After filing of the complaint, the complainant changed its name to Philips
Lumileds Lighting Company LLC.  *See* JA1403-04.

CONFIDENTIAL INFORMATION
DELETED

administrative law judge ("ALJ") (Judge Harris) barring Epistar from asserting

invalidity of the '718 patent.  Specifically, in Order No. 14, which the Commission

adopted, the ALJ granted Lumileds' motion for partial summary determination

dismissing Epistar's Affirmative Defense that the asserted '718 patent claims are

invalid.  JA159-76.

On January 8, 2007, the ALJ issued his final ID in the Commission

investigation.  The ALJ found a violation of section 337 in the importation by

Epistar of MB LED products by reason of infringement of claims 1 and 6 of the

'718 patent, and no violation of section 337 in the importation by respondent of

GB and OMA LED products which he found to be non-infringing.[2]  On May 9,

---

[2] The product designations are explained as follows:  OMA refers generally
to Epistar's [[                    ]] AlGaInP LED products which use an active
LED layer of at least AlGaInP [[

                                                        ]] An AlGaInP LED
refers to an LED that uses an active layer of semiconductor comprised of at least a
combination of aluminum, gallium, indium, and phosphorus.  An ITO LED refers
to an LED that uses a current-spreading layer of indium-tin oxide to enhance LED
efficiency with higher light output.  The designation OMA II refers to a second-
generation of OMA products that Epistar is developing.  *See* JA1434-36.

MB and GB refer generally to Epistar's "metal bond" and "glue bond"
LEDs which use an active LED layer of at least AlGaInP [[

                                                        ]]  The designations MB II and

2007, the Commission issued a notice and opinion reversing-in-part and

modifying-in-part the ALJ's relevant findings.[3] JA7984-85, JA7987-8017. 72

*Fed. Reg.* 38101-2 (July 12, 2007). The Commission adopted the ALJ's finding as

to infringement by Epistar's MB LED products of the '718 patent, and reversed

the ALJ's finding of non-infringement by Epistar's GB and OMA LED products,

based upon the Commission's modification of the ALJ's claim construction of the

"substrate" term as used in claims 1 and 6 of the '718 patent.[4]

Epistar appeals the Commission's determination that Epistar is barred from

---

GB II refer to a second-generation of MB and GB products, respectively, that
Epistar is developing. JA1434-36.

For simplicity in this brief, the terms MB I, GB I, and OMA I have been
introduced to refer to the first-generation of MB, GB, and OMA LED products as
distinct from the second-generation products. Also, unless otherwise specified,
the terms "MB LEDs" or "MB LED products" generally refer to both the MB I
and MB II LED products; the terms "GB LEDs" or "GB LED products" generally
refer to both the GB I and GB II LED products; and the terms "OMA LEDs" or
"OMA LED products" generally refer to both the OMA I and OMA II LED
products.

[3] The ALJ also determined that Epistar's MB, GB, and OMA LED products
do not infringe U.S. Patent Nos. 5,376,580 ("the '580 patent") and 5,502,316 ("the
'316 patent"). *See* JA6749-6803. These findings are not at issue in this appeal.

[4] References in this brief to the Commission's determination and findings
adopting the ALJ's infringement finding refer to the final ID (JA6667-6876).
Other references in this brief to the Commission's determination and findings
reversing or modifying the ALJ's final ID refer to the Commission's Opinion
(JA7987-8017).

CONFIDENTIAL INFORMATION
DELETED

asserting invalidity by virtue of a [[

]] Epistar does not contest that the LED products

subject to this investigation are outside of the [[                    ]] as this term is

defined in a separate agreement between Epistar and Lumileds. *See* JA177,

JA184, JA6742-50. *See also* Epistar's letter of September 14, 2007, in response to

the Court Order concerning Epistar's motion for stay pending appeal. JA13000-

02.

In addition, Epistar appeals the claim construction of both the "transparent

window layer" and "substrate" terms, used in claims 1 and 6 of the '718 patent,

but does not contest that its accused products meet these limitations as construed

by the Commission.

## II.    STATEMENT OF THE FACTS

Epistar's statement of the facts is selective and argumentative. Accordingly,

the Commission presents its own statement of the facts.

### A.    Relevant Prior Litigation and Merger

From September 1999 through September 2001, Lumileds asserted the '718

patent against UEC in a district court action. *See United Epitaxy Co., Ltd. v.*

*Hewlett-Packard Co., Agilent Technologies, Inc., and Lumileds Lighting U.S.,*

CONFIDENTIAL INFORMATION
DELETED.

*LLC*, No. C 00-2518 CW (PVT) (N.D. Cal., filed Sept. 7, 1999). In that litigation,

Lumileds specifically asserted the '718 patent against UEC's absorbing-substrate

LEDs (the LED having a lower light absorbing substrate wafer-bonded to the LED

active layers) which are part of the [[                    ]] definition in a

subsequently negotiated settlement agreement. *See* JA189. In June 2001, the

district court judge (Judge Claudia Wilken) granted Philip's motion for summary

judgment that the '718 patent claims were not anticipated, indefinite, or

unenforceable, and denied UEC's cross-motion for summary determination of

non-infringement, obviousness, inequitable conduct, and misjoinder of an

inventor. JA445-70, *cited* at JA163.[5] On August 30, 2001, Lumileds and UEC

settled the litigation by negotiating and executing a Settlement Agreement and

Mutual Release ("Settlement Agreement"), Stipulated Consent Judgment, and

License Agreement. *See* JA188-207.

As part of the Stipulated Consent Judgment, [[

---

[5] Particularly, UEC had cited Nuese prior art in its attempt to render the '718 patent invalid. JA464-67.

6

CONFIDENTIAL INFORMATION
DELETED

6

]] JA189.

Subsequently, from January 2003 through July 2004, Lumileds asserted the '718 patent against Epistar in district court.  *See Lumileds Lighting U.S., LLC v. Epistar Corp.*, No. C 02-5077 and C 03-1130 CW (PVT) (N.D. Cal.).  In that litigation, Lumileds specifically asserted the '718 patent against Epistar's absorbing-substrate LEDs which are part of the [[                    ]] definition in a

---

[6] [[

]] JA198, ¶ 2.4.

7

subsequently negotiated settlement agreement. *See* JA177. In July 2004,

Lumileds and Epistar settled the litigation by negotiating and executing a

[[








]] *See* respective letters of Epistar,

Lumileds, and the Commission (all filed on September 14, 2007) in response to

the Court Order concerning Epistar's motion for stay pending appeal. *See also*

JA177, JA184, JA6742-50, JA13000-06.

In August 2005, UEC and Epistar signed an agreement, effective at the end

of that year, to merge completely the two companies. JA913-23; *see* JA 3345-46.

8

On December 8, 2005, the Commission instituted the investigation underlying this

case, naming UEC as a respondent with respect to assertions concerning the '718

patent, and Epistar as a respondent with respect to assertions concerning the '580

and '316 patents. JA244-48. Shortly thereafter, on December 30, 2005, the

merger between UEC and Epistar became effective. JA608, JA913-23. As part of

the merger agreement, Epistar, as the surviving company, agreed that, as of the

merger date--

> all the assets, debts, rights, and obligations (including, but not limited
> to the patent right, copyright, trademark right and contract, etc.),
> which are still valid up to the merger benchmark date, of the company
> to expire [UEC] shall be borne by the company to exist as a whole
> [Epistar]. All the lawsuits, non-lawsuit cases, arbitrations, and other
> procedures, which continue to be valid, of the company to expire at
> the merger benchmark date shall be borne by the company to exist as
> the party concerned. JA920, Art. 13.

As such, Epistar assumed all of UEC's contractual and patent-related rights and

obligations, as well as UEC's status as a party to the Commission investigation.

Subsequent to the merger and the ALJ's ruling in Order No. 14, Lumileds

amended its complaint to name Epistar as the sole respondent and to assert the

'718 patent against additional products of the surviving respondent. See JA159-

76, JA1434-38. These amendments were unopposed, and no party petitioned the

Commission for review of the ALJ's Order (Order No. 29) granting Philip's

9

motion to amend. *See* JA1530-31.

## B.     Background of Invention and Patent at Issue

The '718 patent is entitled "Light-Emitting Diode with an Electrically Conductive Window."[7] The patent includes apparatus claims directed to an LED with a special electrically conductive, transparent window layer grown on top of the active LED layers of the semiconductor device in order to enhance current spreading (less light absorption) and thereby provide a higher light output and improved LED efficiency. JA6 [col. 2: 4-8]. The particularly claimed invention includes a semiconductor substrate, an electrical contact to the substrate, active layers for AlGaInP overlying the substrate, a transparent window layer of semiconductor different from AlGaInP (higher electrical conductivity and lower resistivity than AlGAInP) overlying the active layers, and an electrical contact to the window layer. JA6[col. 2: 11-18, 57-59], JA7[col. 3:6-10].

Generally, a surface-emitting LED (used for many types of LED displays to emit visible light at particular wavelengths) comprises an absorbing substrate on which several epitaxial layers are grown to form the LED. These epitaxial layers

---

[7] The patent issued on April 16, 1991, and was originally assigned to Hewlett-Packard Company as recorded by the USPTO. JA2. After a series of name changes and further assignments, on October 16, 2000, the USPTO recorded an assignment of ownership document for the '718 patent executed by Lumileds. The patent expires on December 18, 2009.

may include an n-type confining layer of AlGaInP grown on top of the substrate followed by an active layer of the same material, and then a p-type confining layer of the same material topping the active layer. A front, opaque electrical contact is typically provided on the front or emitting face of the LED and a back electrical contact is provided on the substrate. JA3[Fig. 1], JA6[col. 1:17-32].

Commonly, efficient operation of this type of LED depends on current injected from the front metal contact spreading out laterally to the edges of the LED chip so that light is generated uniformly across the "p-n junction" (a sandwich of upper p-type confining layer, active layer, and lower n-type confining layer). However, when the sheet resistance of the upper p-type confining layer is not low enough, the current will not spread sufficiently and will tend to flow directly down beneath the front contact toward the back contact, resulting in most of the light being generated under the opaque front contact. When this type of "current crowding" occurs, "much of the light generated in this region is blocked and absorbed within the LED chip, thereby severely limiting the efficiency of the device." JA6[col. 1:33-46].

According to the '718 specification, known techniques to solve this "current crowding" problem were not satisfactory, because these techniques spread the current through the use of opaque metal patterns that block light emission.

11

Another technique that uses transparent contacts, such as a transparent front

contact comprised of indium-tin oxide (ITO), was unsatisfactory as well, since

these transparent electrical contacts did not solve the "current crowding" problem.

JA6[col. 1:57-col. 2:1-3].

To solve these prior art difficulties of "current crowding" and high

resistivity in the LED, the claimed invention teaches providing a transparent

window layer of semiconductor, having a higher electrical conductivity (and

therefore lower resistivity) than AlGaInP, overlying the active AlGaInP LED

layers to distribute current from the front contact to the active layers. This results

in more uniform emission of light throughout the p-n junction and improvement in

the efficiency of the device. JA6[col. 2:4-30].

The specification describes and illustrates two exemplary embodiments of

an LED constructed according to the principles of the claimed invention. JA6[col.

2:48-50, 60], JA7[col. 4:36-56]. Particularly, the specification describes an LED

"having active p-n junction layers of AlGaInP overlain by a transparent window

layer of semiconductor different from AlGaInP, with a low resistivity and a

bandgap greater than the active layers, so that the overlying layer is transparent to

light emitted by the p-n junction." JA6[col. 2:11-19]. The specification describes

this first embodiment as "[a]n exemplary light emitting diode (LED) constructed

12

according to principles of this invention [that has] an n-type substrate" with

overlying active layers and a transparent window layer overlying the active layers.

JA6-7[col. 2:48-col. 3:5].

In an alternative embodiment, the specification describes growing an LED

from "epitaxially growing active AlGaInP layers on a GaAs temporary substrate,

epitaxially growing on the active layers a layer of semiconductor having a crystal

mismatch with GaAs and a bandgap greater than the bandgap of the active layers,

and selectively removing the GaAs temporary substrate" and further discloses that

"this leaves a layer of transparent semiconductor adjacent to the active layers

which has sufficient thickness to provide the strength of a substrate."   JA6[col.

2:20-30].

### C.    Claims at Issue

The Commission found that the respondent's products infringe claims 1 and

6 of the '718 patent.  Claim 1, from which claim 6 depends, states:

1. A light-emitting diode comprising:

> a <u>semiconductor substrate</u>,
> an electrical contact to the substrate,
> active p-n junction layers for AlGaInP over the substrate for emitting
> light,
> a <u>transparent window layer</u> of semiconductor different from AlGaInP
> over the active layers and having a bandgap greater than the bandgap of the
> active layers and a resistivity lower than the active layers, and

13

CONFIDENTIAL INFORMAT
DELETED

a metal electrical contact over a portion of the transparent layer.
JA8[col. 5:33-44] (emphasis Added).

### D.    Relevant Commission Findings

#### 1.    Epistar's Bar to Asserting Invalidity of the '718 Patent

As noted, Lumileds moved prior to trial for a partial summary determination

to dismiss Epistar's Affirmative Defense that the '718 patent claims are invalid.

Specifically, Epistar had proffered one ground on which it intended to contest

validity, *viz*, that the '718 patent was invalid in view of a single prior art reference

-- U.S. Patent No. 4,495,514 ("Lawrence").  *See* JA632, JA648-49.

In view of the UEC-Lumileds Consent Judgment and Settlement

Agreements, along with the UEC-Epistar merger agreement, the ALJ found that

the merged company, Epistar, was precluded from raising an invalidity defense in

the Commission investigation.[8]  JA159-76 (Order No. 14).  The ALJ found that

"the language of the [UEC-Lumileds settlement agreement] clearly expresses that

it was intended to cover those future cases regardless of the products at issue" and

that [[

---

[8] In making his determination, the ALJ examined, *inter alia*, the Epistar-
UEC merger agreement along with declarations from experts in Taiwanese law,
which governs the interpretation of that agreement.  *See* Order No. 14 at 2.  The
Lumileds-UEC and Lumileds-Epistar settlement agreements [[
                         ]] *See* JA 200, ¶ 10 (UEC agreement), JA 184, ¶
13.2 (Epistar agreement).

CONFIDENTIAL INFORMATI
DELETED

]] JA170, *citing* JA198. Further, the

ALJ noted that "when the parties [UEC and Lumileds] meant a provision to have

limited application with respect to specific products, such limitations were clearly

expressed." JA171, *citing* JA198.

In addition, the ALJ noted "that Article 13 of the [UEC-Epistar] Merger

Agreement and Article 24 of the BMAL [Taiwanese Business Mergers and

Acquisitions Law] clearly spell out that through the merger, Epistar has assumed

*all* of UEC's rights and obligations and is, therefore, UEC's successor." JA175

(emphasis in Order No. 14), *citing* JA869-70, JA920. The ALJ determined that

those legal obligations that Epistar assumed from UEC "are binding as a whole on

Epistar and may not be limited by Epistar in an attempt to pick and choose by

which of the obligations it will abide." *Id.* Accordingly, the ALJ determined that

Epistar, now standing in UEC's shoes, is barred from raising an invalidity defense

to the assertion of infringement of the '718 patent against any product, including

"future products." *Id.*

### 2.    Claim Construction and Infringement

The claim construction issues on appeal relate to the ALJ's finding, adopted

by the Commission, concerning the construction of the "transparent window layer"

term, and the Commission's construction of the "substrate" term.