a.    "transparent window layer"

The ALJ found that the "transparent window layer" term refers to a transparent layer that spreads current, composed of semiconductor material different from AlGaInP, where the material has a bandgap greater than the bandgap of the active layers and a resistivity lower than the active layers. JA85-100 (Order No. 27). During the Commission proceedings, Epistar argued that the use of ITO in the window layer was disavowed in the specification, that the "transparent window layer" feature cannot include use of ITO because such a construction would render the claim invalid in view of prior art, and that this feature is anticipated and/or obvious in view of the prior art. JA92-100, JA648, JA1584-86, JA1593-603, JA1647-54, JA2220-26, JA2256, JA2696-97, JA2706-16, JA3114-21, JA3161-70, JA3360, JA3368-69, JA6710-11. Specifically, Epistar cited the same prior art (Lawrence) that it had previously cited in its attempt to contest validity of the '718 patent before issuance of Order No. 14. JA93-94, JA1584-86, JA1647-48. After an examination of all of the relevant intrinsic evidence, the ALJ rejected Epistar's proposed interpretation, finding it to be unsupported by the specification.

Particularly, the ALJ found that the specification does not "expressly disavow the use of ITO." JA98, JA6710-11. Although recognizing that a patentee

16

may narrow the meaning of a claim term by unequivocally disavowing claim scope
during prosecution, the ALJ noted that this was not the case here. JA98. He
explained that "references in the specification to ITO discuss drawbacks to the use
of ITO *as a front contact*, not as a transparent window layer." *Id.* (emphasis in
ID). He declined to find that a "statement in the background section that the use
of ITO was not 'completely satisfactory' as a front contact is a disclaimer that ITO
does not fall within the scope of the claimed 'transparent window layer.'"
JA6710-11, JA98. The ALJ also rejected Epistar's argument that the specification
verbiage "'by promoting current spreading without blocking the light generated or
increasing series resistance' serves as a limitation on the claimed 'transparent
window layer.'" JA6710-11. Accordingly, the ALJ construed the scope of
"transparent window layer" to include ITO.

Having construed the claim, including the contested "transparent window
layer" term, the ALJ next examined whether any of the respondent's accused LED
products infringed asserted claims 1 and 6 of the '718 patent. JA6700-42. Based
on his claim construction, he found that the accused MB LED products fell within
the scope of the asserted claims because Epistar's accused MB LED products
"contain an upper ITO layer which is transparent, spreads current, is of a
semiconductor different from AlGaInP, is over the active layers, and has a

17

bandgap greater than the bandgap of the active layers and a resistivity lower than

the active layers." JA6722. Accordingly, the ALJ found that these products

infringe the asserted claims. JA6703-6724.

### b.    "substrate"

With respect to the meaning of the term "substrate," the Commission on

review construed the term differently from the ALJ. JA7994-98. Applying its

claim construction, the Commission found infringement by respondent's GB and

OMA LED products. Epistar challenges the Commission's construction, which

we discuss below.

Based on the intrinsic evidence, the Commission found that "substrate"

refers to the supporting material in an LED upon which the other layers of an LED

are grown or to which those layers are attached, and to include the case in which

the supporting material functioning as the substrate is grown on top of, or attached

to, the other layers. JA7994-98. In construing the term, the Commission rejected

Epistar's contention that the substrate is limited to a single layer. *Id.* The

Commission found Epistar's proposed interpretation to be unsupported by the

specification.

Particularly, the Commission explained that the "single layer" interpretation

of "[substrate] is too limiting because we find that this term may include multiple

18

layers (elements) . . ." JA7998. In this regard, the Commission noted that the specification does not "contain any disclaimer limiting a 'substrate' to a single layer," but rather that "the LED structure depicted [in the specification] is described as exemplary, and therefore we view the [substrate] helping to form the LED structure as exemplary as well." *Id.* Accordingly, the Commission construed "substrate" to encompass multiple layers rather than as being limited to a single layer.

Having construed the "substrate" term, the Commission examined whether the respondent's accused GB and OMA LED products infringed asserted claims 1 and 6. JA8001-07. Based on its claim construction and comparing the construed claims to the accused products, the Commission found that the accused GB and OMA LED products fell within the scope of the asserted claims and that respondent's products therefore infringed these claims. Specifically, the Commission found that Epistar's accused GB and OMA LED products infringe because theses products have all of the claimed features as based on the following:

> 1) the combination of the GaP and lower ITO contact layers, together with the Si or Sapphire bottom layers and any intervening layers, forms a 'composite substrate' to satisfy the claimed '[substrate]' element, 2) the lower ITO contact layer, one of the multiple layers of the composite substrate, contacts a metal bonding pad to provide 'an electrical contact to the substrate' that satisfies this claimed element, and 3) the upper

19

CONFIDENTIAL INFORMATION
DELETED

> ITO contact layer performs current spreading and contacts
> another metal bonding pad to satisfy the other claimed
> elements.

JA8007.

As noted above, the Commission also affirmed the ALJ's determination

that, based on the construction of "transparent window layer," respondent's MB

LED products infringe the asserted claims as well.  Epistar does not challenge the

Commission's findings of infringement provided the Commission's claim

construction of the two contested terms is affirmed.

## SUMMARY OF THE ARGUMENT

The Commission correctly determined that Epistar is barred from asserting

invalidity of the '718 patent.  From the clear and undisputed language of the UEC-

Epistar merger agreement, the surviving company – Epistar –  assumed all of

UEC's obligations relating to patents and litigation, including the ITC case.  One

of UEC's obligations was its unqualified bar from asserting the invalidity of the

'718 patent in any dispute brought at any time and involving any products.

Specifically, the language of the UEC-Lumileds Consent Judgement and

settlement/license agreements [[

]] Lumileds, as the bystander to

20

the UEC-Epistar merger, is entitled to continued enforcement of the rights it negotiated with UEC.

Further, even if the Commission's conclusion regarding this issue was not correct, any error would be harmless. This is so because Epistar presented all evidence relevant to its invalidity defense during its claim construction argument before the Commission. After hearing and evaluating all of this evidence, the ALJ correctly determined, and the Commission agreed, that the prior art asserted by Epistar did not limit the scope of the asserted claims.

The Commission's findings concerning claim construction are correct and should also be upheld. The Commission properly applied the relevant case law and correctly construed the claims at issue in accordance with the plain meaning of the claim language and the specification. Based on this claim construction and evidentiary record, the Commission correctly determined that asserted claims 1 and 6 are infringed by Epistar's MB, GB, and OMA LED products.

Particularly, the Commission properly construed the "transparent window layer" term to be a transparent layer that spreads current, composed of semiconductor material different from AlGaInP, where the material has a bandgap greater than the bandgap of the active layers and a resistivity lower than the active layers in an LED. In addition, from review of the intrinsic record, the Commission

21

properly determined that the term does not exclude use of ITO. Indeed, the
intrinsic record is consistent with the Commission's claim construction, as the
specification and the prosecution history do not contain any disclaimers excluding
use of ITO as part of the "transparent window layer."

Notwithstanding Epistar's contention, a *KSR* analysis does not affect the
Commission's claim construction of the "transparent window layer" term. No
matter which iteration of *KSR* is relied upon (*e.g.*, "obvious to try" or "known
work in the field may prompt variations of it for use in the same field based on
design incentives or other market forces"), the claimed feature of a electrically
conductive, current-spreading window layer was not known or present in any form
in the relevant prior art. Further, the specification clearly discloses the substantial
distinction between the prior art use of transparent electrical contacts and this
claimed feature.

Likewise, the Commission properly construed the "substrate" term. As the
Commission correctly found, "substrate" means the supporting material in an LED
upon which the other layers of an LED are grown or to which those layers are
attached, and includes the case in which the supporting material functioning as the
substrate is grown on top of, or attached to, the other layers. Further, from review
of the intrinsic record, the Commission properly determined that the term is not

22

limited to a single layer, but rather may include one or more layers. The intrinsic

record is consistent with the Commission's claim construction, as the specification

and the prosecution history do not contain any disclaimers limiting a "substrate" to

a single layer. Rather, the specification notes that the LED structure depicted is

solely exemplary. Based on this claim construction and evidentiary record, the

Commission correctly determined that asserted claims 1 and 6, in addition to being

infringed by Epistar's MB LED product, are also infringed by Epistar's GB and

OMA LED products.

## ARGUMENT

### I.    STANDARD OF REVIEW

The Commission's decision to preclude Epistar from raising an invalidity

defense was made pursuant to the ALJ's partial summary determination in Order

No. 14, which the Commission did not review. Judicial review of a Commission

determination on summary determination is subject to the same standard of review

as is applied to rulings of district courts on summary judgment motions. *See, e.g.,*

*Hazani v. United States International Trade Commission*, 126 F.3d 1473, 1476

(Fed. Cir. 1997). This Court reviews summary judgment motions *de novo*.

*KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1449 (Fed.

Cir. 1993). Thus, the Court reviews a grant of summary judgment to determine

whether any genuine issues of material fact are in dispute, and whether any errors

of law were made. *Haynes International, Inc. v. Jessop Steel Co.*, 8 F.3d 1573,

1576 (Fed. Cir. 1993), *clarified on reh'g,* 15 F.3d 1076 (Fed. Cir. 1994). In

objecting to Order No. 14, Epistar does not claim that there are any material issues

of fact in dispute, but, rather alleges that the decision is incorrect as a matter of

law. Epistar Br. at 16.

With respect to the Commission's findings of infringement of claims 1 and

6 of the '718 patent, Epistar challenges only the Commission's claim construction,

not the factual infringement findings if that claim construction is correct. *See*

Epistar Br. at 24. Claim construction is a question of law that is reviewed de

novo. *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1362 (Fed. Cir.

1999).

## II.    THE COMMISSION CORRECTLY FOUND THAT EPISTAR WAS BARRED FROM ASSERTING INVALIDITY OF THE '718 PATENT

### A.    The UEC-Lumileds Settlement/License Agreements Bar UEC and its Successors from Asserting Invalidity of the '718 Patent At Any Time in Any Dispute Concerning Any Products.

The UEC-Lumileds Stipulated Consent Judgment states that:

[[

24

]]

JA205 (emphasis added).

Similarly, the UEC-Lumileds Settlement Agreement states that:

[[



]] JA198, JA200 (emphasis added).

As the ALJ found, the language of the consent judgment is unambiguous in that "UEC agreed, without qualification, that all claims of the '718 patent are valid and enforceable." JA166. Further, paragraph 6 of the consent judgement reflects UEC's acknowledgment of this bar to asserting invalidity when it specifically states [[



]] *See* JA205 (emphasis added). This language established the parties' clear intention "to restrict UEC's ability to challenge validity and enforceability of the '718 patent in later disputes regarding <u>all</u> other products, <u>without limitation</u>." JA167 (emphasis

25

added).  In addition, the term [[                         ]] should be interpreted

broadly, given that other sections of the consent judgment used express language

when the parties intended to limit coverage to a narrower set of products.  For

example, the final sentence of [[


]]  Therefore, Epistar's efforts (Br. at 9, 11, 21-24) to interpret

the term [[                         ]] as a narrow subset of products

not including the so-called "pre-merger products," is, as the Commission found,

"contrary to what is actually written in the consent judgment."  JA167.

Moreover, the UEC-Lumileds Consent Judgment and settlement agreement

unambiguously state that [[


]]  As such, these documents patently

reflect the parties' intent to estop UEC from relitigating invalidity and

unenforceability of the '718 patent at any time in any dispute concerning any

products.  *See* JA198, JA205.

Juxtaposed with this explicit statement of present and future obligations is

the clear language of the UEC-Epistar merger agreement under which Epistar

voluntarily assumes all of UEC's "rights and obligations," including obligations

arising in contract or applicable to this pending lawsuit. *See* JA920, Art. 13.  The

parties do not dispute that Epistar, as the successor-in-interest to UEC, voluntarily

undertook all of UEC's obligations in accordance with the Taiwanese law

governing the merger agreement.  By virtue of the express language of the merger

agreement, all existing obligations as of the merger date that had accrued to UEC

were to "be borne by the company to exist as a whole," (JA920, Art. 13), that is by

the merged company now known solely as Epistar.  These obligations included

those related to patent rights and to any existing litigation or other procedures,

thereby including this section 337 investigation. *See id*.  Epistar thus voluntarily

assumed all obligations held by UEC, including the bar against asserting invalidity

of the '718 patent.  JA920.

There is no basis for Epistar's suggestion that an exception exists for its

inherited, express obligation barring it from contesting validity of the '718 patent.

In this regard, Epistar's reliance on its separate agreement with Lumileds is a red

herring.  There simply is no evidence that Epistar bargained for a guaranteed right

to assert invalidity in every infringement action brought by Lumileds concerning

the '718 patent.  Contrary to Epistar's suggestion (Br. at 2, 16, 18), there is

nothing in the Epistar-Lumileds settlement agreement that grants Epistar an

unfettered right to assert invalidity of the '718 patent in any future dispute.

27

Rather, the relevant provision of that agreement [[

]] Lumileds brought a '718 patent infringement claim against

Epistar's current <u>Licensed Products</u>. JA184, ¶ 11.2.  As noted in the Statement of

the Facts, *supra*, it is undisputed that the products-at-issue in the Commission

investigation *are not* licensed and do not fall within the scope of those products

defined in the Epistar-Lumileds agreement as "current Licensed Products." *See*

A6742-50.[9]

As such, the only settlement or consent agreements that have a bearing on

this instant case are those between UEC and Lumileds.  This Court has noted that,

under California law, "'[a] contract must be so interpreted as to give effect to the

mutual intention of the parties as it existed at the time of contracting.'" *Unova,*

*Inc. v. Acer Inc.*, 363 F.3d 1278, 1281 (Fed. Cir. 2004) (citations omitted).  The

intention of the contracting parties to the UEC-Lumileds agreements is clear in

respect to the unqualified applicability of the bar against challenging the validity

---

[9] For this reason, Epistar's reference to comments the ALJ made at a later date regarding his observations about the Epistar-Lumileds agreement is beside the point. *See* Epistar Br. at 10-12.  Moreover, contrary to Epistar's characterization, the ALJ did not indicate that he had made a mistake during the prehearing conference, but instead generally criticized Epistar for not clearly referencing the Epistar-Lumileds agreement in its briefing and not objecting to Lumileds' motion to amend the complaint to add more of Epistar's products to the investigation. JA8138, JA4582-85.

of the '718 patent.  The language of the Agreement and Consent Settlement

[[


]] *See* JA205, ¶ 6 [[


]] JA 198, ¶ 2.4 (same).

In addition to the unlimited reach of product scope under the negotiated

UEC settlement, the clear language of the consent judgment and the UEC-

Lumileds settlement agreement state that [[


]] JA200, ¶ 7;

JA205, ¶ 6  (emphasis added).  Epistar, as the successor to UEC by virtue of the

UEC-Epistar merger, inherited [[

]] *See Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1352 (Fed.

Cir. 1999); *Precise Exercise Equip., Inc. v. Kmart Corp.*, 2000 U.S. Dist. LEXIS

21498, at *5-7 (C.D. CA 2000).  *Precise* and *Diversey* both teach that the

obligated party may not "[participate] in any action contesting [validity] . . ."

*Diversey*, 191 F.3d at 1352; *Precise*, at *6-7.  Yet, in this case, the obligated party

– formerly UEC, now Epistar – is essentially seeking the ability to do just that by

29

virtue of their merger into one company. Allowing the merged company to contest

validity would, in effect, relieve it of [[



]] *See Diversey*, 191 F.3d at 1352.

**B.    The Commission's Decision is Consistent with the Public Interest.**

Epistar claims that the Commission's disallowance of an invalidity defense

in this investigation is against the public interest and therefore inconsistent with

the Supreme Court's decision in *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969).

*See* Epistar Br. at 21-22. In making this argument, Epistar gives short shrift to the

recognition by this Court that questions concerning application of a bar against

asserting validity are often, as here, specific to the circumstances involved.

Notwithstanding *Lear*'s general disapproval of agreements not to contest validity

as contrary to the public interest, in various cases this Court has found the

circumstances warranted upholding such agreements. *See, e.g., Flex-Foot, Inc. v.*

*CRP, Inc.*, 238 F.3d 1362, 1368-9 (Fed. Cir. 2001); *Hemstreet v. Spiegel, Inc.*, 851

F.2d 348 (Fed. Cir. 1988); *Foster v. Hallco Mfg. Co.*, 947 F.2d 469 (Fed. Cir.

1991); *Studiengesellschaft Kohle M.B.H. v. Shell Oil Co.*, 112 F.3d 1561 (Fed. Cir.

1997).

Particularly, this Court distinguished those cases from *Lear* where, for example, "the license did not contain, and was not accompanied by, any promise by the licensee not to challenge the validity of the patent," or where the license agreement was created as part of a litigation settlement. *See Flex-Foot, Inc.*, 238 F.3d at 1368-9. As in those cases, the UEC-Lumileds settlement documents were created as part of a litigation settlement and the UEC-Lumileds license agreement specifically included [[                              ]] *See* JA188-207. Under circumstances such as these, this Court has found that "while the federal patent laws favor full and free competition in the use of ideas in the public domain over the technical requirements of contract doctrine, settlement of litigation is more strongly favored by the law." *See Flex-Foot, Inc.*, 238 F.3d at 1369. Thus, the UEC-Lumileds settlement documents, which resolved litigation, are to be strongly favored by the law. [[

                              ]] *See* JA198, JA205.

Indeed, the ALJ addressed the public interest concern articulated in *Lear*, when he correctly recognized that the estoppel created by the UEC-Lumileds contract is not contrary to "'the public interest in full and free competition in the use of ideas.'" *See* JA171, *citing Lear*, 395 U.S. 653, 670 (1969). As the ALJ noted, "'[t]here is a compelling public interest and policy in upholding and

enforcing settlement agreements voluntarily entered into, because enforcement of
settlement agreements encourage parties to enter into them - thus fostering judicial
economy." JA171-72, *citing Flex-Foot, Inc.*, 238 F.3d at 1369. Accordingly, the
bar against raising an invalidity defense in this investigation arose by virtue of
enforcement of the UEC-Lumileds agreements, which furthered the public interest
in settling litigation.

### C.    Epistar's "Pre-Merger" Distinction is Meaningless.

Epistar claims that it is entitled to assert invalidity against the '718 patent
because it produced OMA LED products prior to the merger, and because,
subsequent to the merger, the merged company developed second generation
versions of the GB and MB LED product lines. *See* Epistar Br. at 8, 16. This
distinction makes little sense in the context of the obligations arising under the
relevant agreements. As of the time of the merger, any LED products developed
or sold by either company became comingled LED products of the merged
company. Further, Lumileds' original complaint alleged specific instances of
unlawful importation of the accused OMA products in October 2005 – after UEC
and Epistar had signed the merger agreement and presumably had begun to
consolidate. JA250.

Thus, in addition to the first generation of GB and MB LED products

32

(which Epistar now concedes are covered by the invalidity bar), the OMA LED

line, as well as second generations of the GB and MB family of LEDs squarely fall

within the ambit of the company's LED products developed after the UEC-

Lumileds settlement, *i.e.* [[

]] Those products are expressly covered

by the UEC-Lumileds agreement's bar to asserting invalidity. *See* JA198, JA205.

In turn, the UEC obligations assumed by Epistar, by virtue of its merger

agreement, necessarily bar Epistar from asserting invalidity of the '718 patent.

The cases cited by Epistar (Br. at 19-21) are irrelevant to the analysis and

clearly distinguishable based on their facts. For example, these cases relate to a

licensee attempting to enforce a license agreement as to different patents owned by

a third-party who happens to later acquire the licensor's patents. *See Medtronic*

*AVE, Inc. v. Advanced Cardiovascular Systems, Inc.*, 247 F.3d 44 (3rd Cir. 2001);

*Spindelfabrik Suessen-Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer*

*Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081-82 (Fed. Cir. 1987);

*ZapatA Indus., Inc. v. W.R. Grace & Co.-Conn.*, 51 U.S.P.Q.2d 1619 (S.D. Fla.

Feb. 4, 1999). In contrast, this appeal concerns a licensee and its successor-in-

interest attempting to avoid a license agreement as to the same patent owned by

the same licensor. In addition, the UEC-Lumileds agreement, unlike the one at

33

issue in *Medtronic*, clearly reflects the parties' intention to apply the obligation to

[[                                                                                    ]]

which includes future products (*i.e.*, future property interests). *Compare Meditronic*, 247 F.3d at 61, n. 7 *with* JA198, ¶ 2.4 and JA205, ¶ 6.

More on point for the purposes of this case are the decisions in *Diversey* and *Precise*. In both cases, patent infringement claims were brought against products that were unknown at the time the pertinent consent judgments issued. Yet, this Court in *Diversey*, and the district court in *Precise*, nonetheless found that "[the obligated party] surrendered its right to challenge the validity of the patents in any context." *Diversey*, 191 F.3d at 1351-52; *Precise*, at *2-7. Likewise, [[




]]

In any event, if there is merit to Epistar's product-based distinctions, Epistar waived its right to challenge the bar against asserting invalidity with respect to its allegedly distinct products. Although Epistar petitioned the Commission for review of Order No. 14, at that time, the only products alleged in the complaint to infringe the '718 patent were UEC's MB I products – products as to which Epistar admits the bar against asserting validity pertains (Br. at 8-9). *See also* JA247,

34

JA531. Subsequent to Order No. 14, Lumileds moved to amend the complaint,

*inter alia,* to identify additional Epistar LEDs alleged to infringe the '718 patent,

including those products that Epistar now defines as its "pre-merger" products.

JA1403-1526. Epistar did not oppose the motion, even though it admits (Br. at

10) that Order No. 14 "was not particularly consequential" when it issued and

would only become relevant if and when Lumileds asserted the '718 patent against

these "pre-merger" products as defined by Epistar. When Lumileds sought to

amend the complaint to make such assertions, however, Epistar did not oppose the

motion. Nor did it comment further in its post-hearing brief on this issue,

notwithstanding that the motion was discussed during the prehearing conference,

at which time the ALJ directed Epistar to comment in its post-hearing brief on the

"bar against contesting validity" issue. JA4583-85. On October 23, 2006, the

ALJ granted Philip's motion to amend the complaint, and no party petitioned the

Commission for review of the ALJ's order granting the motion. JA1530-31.

Although, in petitioning for review of Order No. 14, Epistar discussed the

possible consequences of a future expansion of the scope of the investigation, it

raised no objection when the complaint was actually amended. At the time the

complaint was amended, Order No. 14 governed the proceedings, therefore barring

Epistar from raising an invalidity defense regarding the '718 patent. If Epistar

35

wished to challenge the inclusion of new products in the investigation, subject to

the rulings that governed this investigation, it could have objected to the

amendment or petitioned the Commission for review of the Initial Determination

granting the motion to amend.  Having failed to do so, it cannot now raise this

issue under the guise of a challenge to Order No. 14, given that it concedes that

the bar against asserting invalidity applies to <u>some</u> products.  *See* 19 C.F.R. §§

210.42(c) and 210.43 (providing avenue for parties to petition the Commission for

review of an initial determination, including one granting a motion to amend the

complaint);  *cf. Texas Instruments v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165,

1176 (Fed. Cir. 1993) (issue is waived when the relevant "defect" is not raised in

petition for review submitted to the Commission).

**D.     Epistar's Challenge to the Preclusion of its Invalidity Defense
Can Be Dismissed as "Harmless Error" Since Epistar Presented,
and the Commission Considered, All Evidence Relevant to the
Asserted Invalidity Defense as Part of the Claim Construction
Portion of the Investigation and the Commission Properly
Construed the "Transparent Window Layer" Term as Not
Excluding Use of ITO.**

Although Epistar alleges that it was erroneously estopped from asserting

invalidity, it overlooks that it technically put forth its entire invalidity case against

the '718 patent, by presenting the identical evidence relevant to that defense in

arguing for its narrow construction of the "transparent window" language.  Epistar

36

Br. at 32, 48 & n. 5, 8. Throughout the claim construction portion of the

Commission investigation, Epistar repeatedly asserted that the "transparent

window layer" feature excludes use of ITO and that this feature is anticipated

and/or obvious in view of the prior art. *See, e.g.*, JA92-100, JA648, JA1584-86,

JA1593-603, JA1647-54, JA2220-26, JA2256, JA2696-97, JA2706-16, JA3114-

21, JA3161-70, JA3360, JA3368-69, JA6710-11. Likewise, Epistar continues to

assert in this appeal that the "transparent window layer" term as construed by the

Commission is anticipated and/or obvious in view of the prior art. Epistar's Brief

at 26-54 & n. 9.

Thus, Epistar presented during the Commission investigation, and continues

to discuss in its appellate brief, the same prior art (the Lawrence, Yamagoshi,

Watanabe, and Nuese references, and articles from the Journal of Crystal Growth)

and the same so-called "criticisms of ITO" in the specification that already were

and would have been used to assert invalidity. *Id.* For example, during the claim

construction proceedings Epistar asserted, as invalidity evidence, a declaration by

Stringfellow who also co-authored a prior art reference cited by Epistar in its brief.

Epistar Br. at 52, JA1639-64, JA2215-97, JA2691-2765. Moreover, Epistar's

current argument (Br. at 49-54) that the "transparent window layer" feature is

obvious in view of *KSR*, further demonstrates that Epistar has not let the ruling in

37

Order No. 14 prevent it from making the arguments it intended to make concerning validity.  Given that Epistar actually presented its complete invalidity evidence during the Commission investigation, and continues to make related arguments on appeal, it cannot show that it was harmed by the decision barring it from formally asserting invalidity.  *Cf. Cornwall v. U.S. Manuf., Inc.*, 800 F.2d 250 (Fed. Cir. 1986) (invalidity evidence was never presented at trial court due to denial of motion to amend answer).

Even if there were merit to Epistar's argument that it was erroneously estopped from asserting invalidity, any error would therefore be "harmless."  In light of this, and given that (as discussed *infra*) the ALJ properly construed the "transparent window layer" feature as not excluding use of ITO, the preclusion of Epistar from officially asserting invalidity would not in any event warrant reversal of the Commission's determination.  *See, Koyo Seiko Co. Ltd. v. United States*, 95 F.3d 1094, 1101 (Fed. Cir. 1996), *quoting N.L.R.B. v. Am. Geri-Care, Inc.*, 697 F.2d 56, 64 (2d Cir. 1982); *see also N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766, n. 6 (1969).  Indeed, the error allegedly committed by the Commission, when it barred Epistar from asserting invalidity, would be insufficient for reversal and remand where, as here, there is *much less than* "a significant chance that but for the error, the agency might have reached a different result."  *See Koyo*, 95 F.3d

at 1101, *quoting  Am. Geri-Care*, 697 F.2d at 64.

Even if the case were remanded to allow Epistar officially to assert its

invalidity defense, this exercise would amount to no more than a duplicative

presentation of evidence and issues already considered by the Commission relative

to claim construction.  As discussed, *infra*, the Commission has already

determined, correctly, that the asserted prior art is insufficient to narrow the

construction of the  "transparent window layer" feature to exclude ITO and does

not render this feature anticipated and/or obvious.  JA93-98, JA6710-11.  As such,

reversal and remand by this Court on this issue would likely be an "idle and

useless formality" because it is doubtful that the Commission would issue a ruling

concerning invalidity that is inconsistent with its claim construction determination.

*See Am. Geri-Care*, 697 F.2d at 64, *citing Wyman-Gordon*, 394 U.S. at 766, n. 6.

## III.    THE COMMISSION'S CONSTRUCTION OF THE CLAIM TERM "TRANSPARENT WINDOW LAYER" IS CORRECT.

### A.    The Commission Properly Construed the "Transparent Window Layer" Term as Not Excluding Use of ITO

In portions of the final ID adopted by the full Commission, the ALJ

correctly construed the claim term "transparent window layer" in accordance with

the teachings of this Court.  *See, e.g ., Markman v. Westview Instruments, Inc.*, 52

F.3d 967, 979 (Fed. Cir. 1995) (en banc); *Vitronics Corp. v. Conceptronic, Inc.*, 90

39