MORGAN, LEWIS & BOCKIUS LLP
Michael J. Lyons (State Bar No. 202284)
Andrew J. Wu (State Bar No. 214442)
Ryan L. Scher (State Bar. No. 244706)
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA  94306-2122
Tel:  650.843.4000
Fax:  650.843.4001
mlyons@morganlewis.com
awu@morganlewis.com
rscher@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Daniel Johnson, Jr. (State Bar No. 57409)
Amy M. Spicer (State Bar No. 188399)
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:  415.442.1000
Fax:  415.442.1001
djjohnson@morganlewis.com
aspicer@morganlewis.com

Attorneys for Defendant and Counterclaimant
PHILIPS LUMILEDS LIGHTING COMPANY, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPISTAR CORPORATION,<br><br>        Plaintiff,<br><br>        v.<br><br>PHILIPS LUMILEDS LIGHTING COMPANY, LLC,<br><br>        Defendant.<br><br>_____<br><br>AND RELATED COUNTERCLAIMS | Case No. C-07-5194 CW<br><br>**REDACTED MOTION BY PHILIPS LUMILEDS LIGHTING, LLC FOR JUDGMENT ON THE PLEADINGS WITH RESPECT TO EPISTAR CORPORATION'S FIRST, THIRD, AND FOURTH CLAIMS REGARDING UNFAIR COMPETITION AND TORTIOUS INTERFERENCE**<br><br>Date:  July 10, 2008<br>Time:  2:00 p.m.<br>Location: Courtroom 2, 4th Floor<br>Judge:  The Honorable Claudia Wilken |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6

REDACTED PHILIPS LUMILEDS' MOTION FOR
JUDGMENT ON THE PLEADINGS
C 07-5194 CW

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND .................................................................................................... 2

    A.    Prior District Court and ITC Litigation................................................... 2

    B.    Lumileds' Letters .................................................................................... 3

    C.    Epistar's Motion to Stay ......................................................................... 6

    D.    Epistar's Pattern of Asserting Meritless Claims ..................................... 7

III.  LEGAL STANDARD FOR JUDGMENT ON THE PLEADINGS................................ 8

IV.   EPISTAR'S UNFAIR COMPETITION CLAIMS ARE BARRED BY THE
    LITIGATION PRIVILEGE AS A MATTER OF LAW........................................ 9

    A.    Lumileds' letters are absolutely protected by the litigation privilege
        because they concern the ITC Action ................................................... 10

    B.    Lumileds' letters are absolutely protected by the litigation privilege
        because the recipients possessed a substantial interest in the outcome of the
        ITC Action ............................................................................................. 10

    C.    Lumileds' letters are absolutely protected by the litigation privilege
        because they function as a necessary step in the ITC process and serve its
        purposes ................................................................................................. 12

    D.    Epistar's attempt to "plead around" the litigation privilege by alleging
        unfair competition fails as a matter of law............................................ 14

    E.    The underlying policy of the litigation privilege supports absolute
        protection for Lumileds' letters............................................................. 15

V.    EVEN IF THE LITIGATION PRIVILEGE DID NOT APPLY, EPISTAR'S
    UNFAIR COMPETITION CLAIMS STILL FAIL AS A MATTER OF LAW ............. 16

    A.    Epistar's Unfair Competition Claim under the Lanham Act fails as a matter
        of law because Lumileds' letters truthful............................................. 16

    B.    Epistar's Unfair Competition Claim under California Business and
        Professions Code section 17200 fails as a matter of law because Lumileds'
        letters are fair, lawful, and truthful....................................................... 18

    C.    Epistar's tortious interference claim fails as a matter of law because
        Lumileds did not engage in any independently wrongful conduct ....................... 19

    D.    Epistar's Unfair Competition Claims are preempted by federal patent law
        because Lumileds' letters are accurate and communicated in good faith............. 20

VI.   CONCLUSION........................................................................................................ 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

REDACTED PHILIPS LUMILEDS' MOTION FOR
JUDGMENT ON THE PLEADINGS
C 07-5194 CW

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*Adams v. Super. Ct.*
  2 Cal. App. 4th 521, 529 (Ct. App. 1992)................................................................ 9, 10

5

*Avery Dennison Corp. v. Acco Brands, Inc.*
6  2000 U.S. Dist. LEXIS 3938, *28 (C.D. Cal. 2000)................................................ 12

7

*Bio-Tech. Gen. Corp. et al. v. Genentech, Inc.*
  80 F.3d 1553, 1564 (Fed. Cir. 1996)........................................................................ 5

8

*Blanchard v. DIRECTV, Inc. et al.*
9  123 Cal. App. 4th 903, 921 (Ct. App. 2004)............................................................ 13

10

*Bylin Heating Sys. et al. v. M&M Gutters, LLC et al.*
  2008 U.S. Dist. LEXIS 21253, *10-*12 (E.D. Cal. 2008)........................................ 11, 12

11

*C.R. Bard, Inc. v. M3 Sys., Inc.*
12  157 F.3d 1340, 1369 (Fed. Cir. 1998)...................................................................... 20

13

*Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*
  20 Cal. 4th 163, 182 (1999) .................................................................................... 14, 15, 18

14

*Concrete Unlimited Inc. v. Cementcraft, Inc.*
15  776 F.2d 1537, 1539 (Fed. Cir. 1985)...................................................................... 16

16

*Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*
  911 F.2d 242, 244 (9th Cir. 1990)............................................................................ 17

17

*Costa v. Super. Ct.*
18  157 Cal. App. 3d 673, 678 (Ct. App. 1984).............................................................. 10

19

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*
  11 Cal. 4th 376, 389 (1995) .................................................................................... 19

20

*eCash Techs., Inc. v. Guagliardo*
21  210 F. Supp. 2d 1138, 1145-1146 (C.D. Cal. 2000) ................................................ 13, 14

22

*Farmers Ins. Exch. et al. v. Super. Ct.*
  2 Cal. 4th 377, 383 (1992) ...................................................................................... 18

23

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*
24  362 F.3d 1367, 1374-1375 (Fed. Cir. 2004) ............................................................ 20, 21

25

*Golan v. Pingel Enter., Inc. et al.*
  310 F.3d 1360, 1371 (Fed. Cir. 2002)...................................................................... 18, 21

26

*GP Indus., et al. v. Eran Indus., et al.*
27  500 F.3d 1369, 1374 (Fed. Cir. 2007)...................................................................... 21

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

REDACTED PHILIPS LUMILEDS' MOTION FOR
JUDGMENT ON THE PLEADINGS
C 07-5194 CW

# TABLE OF AUTHORITIES
### (continued)

Page

*Hagendorf v. Brown et al.*
  699 F.2d 478, 480 (9th Cir. 1983) ................................................................. 15

*Healy v. Tuscany Hills Landscape & Recreation Corp.*
  137 Cal. App. 4th 1, 5 (Ct. App. 2006) ........................................................ 10

*Hunter Douglas, Inc. et al. v. Harmonic Design, Inc. et al.*
  153 F.3d 1318, 1336 (Fed. Cir. 1998) ...................................................... 19, 20

*Kaplan v. Helenhart Novelty Co.*
  182 F.3d 311, 314 (2d Cir. 1950) ................................................................. 21

*Kashian v. Harriman et al.*
  98 Cal. App. 4th 892, 913 (Ct. App. 2002) ........................................ 9, 13, 17

*Klein v. Earth Elements, Inc.*
  59 Cal. App. 4th 965, 969 (Ct. App. 1997) ............................................. 18, 19

*Lerette v. Dean Witter Org., Inc. et al.*
  60 Cal. App. 3d 573 (Ct. App. 1976) .......................................................... 15

*Lumileds Lighting U.S., LLC v. Epistar Corp. et al.*
  No. 05-4521 (N.D. Cal. Feb. 24, 2006) ......................................................... 2

*Mallinckrodt, Inc. v. Medipart, Inc. et al.*
  976 F.2d 700, 710 (Fed. Cir. 1992) ....................................................... 16, 18, 21

*McClatchy Newspapers, Inc. et al. v. Super. Ct.*
  189 Cal. App. 3d 961, 970 (Ct. App. 1987) ................................................ 10

*Mfrs. Life Ins. Co. et al. v. Super. Ct.*
  10 Cal. 4th 257, 283 (1995) ....................................................................... 15

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*
  165 F.3d 891, 897 (Fed. Cir. 1998) .................................................. 16, 18, 20, 21

*Parrino v. FHP, Inc. et al.*
  146 F.3d 699, 706 (9th Cir. 1998) ................................................................ 9

*Prof'l Real Estate Investors, Inc., et al. v. Columbia Pictures Indus., Inc., et al.*
  508 U.S. 49, 60 (1993) ......................................................................... 20, 21

*Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., LLC*
  2007 U.S. Dist. LEXIS 37665 ............................................................... 11, 12

*Rothman v. Jackson*
  49 Cal. App. 4th 1134, 1139-1140 (Ct. App. 1996) ................................. 9, 10, 13

*Rubin v. Green et al.*
  4 Cal. 4th 1187, 1193-1194 (1993) ...................................................... 9, 10, 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

**TABLE OF AUTHORITIES**
(continued)

Page

*Sharper Image Corp. v. Target Corp. et al.*
  425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) ............................................... 9, 10, 11, 12

*Silberg v. Anderson*
  50 Cal.3d 205, 213 (1990) ................................................................... 9, 10, 13, 15

*Va. Panel Corp. v. MAC Panel Co.*
  133 F.3d 860, 869 (Fed. Cir. 1997).............................................................. 12, 16, 20

*Virtue v. Creamery Package Mfg. Co.*
  227 U.S. 8, 37-38 (1913)................................................................................. 20

*Westlands Water Dist. v. Firebaugh Canal*
  10 F.3d 667, 670 (9th Cir. 1993)....................................................................... 9

*Zenith Elecs. Corp. et al. v. Exzec, Inc.*
  182 F.3d 1340, 1353 (Fed. Cir. 1999)................................................................. 17, 19, 20

**Other**

15 U.S.C. § 1125(a) ....................................................................................... 16

19 C.F.R. § 12.39(b)(2) .................................................................................... 2, 13

19 C.F.R. § 210.27(c)(1) ................................................................................... 4, 5

19 U.S.C. § 1337(d) ....................................................................................... 2, 13

28 U.S.C. § 1659 ........................................................................................... 2

35 U.S.C. § 281 ............................................................................................ 16

35 U.S.C. § 287 ............................................................................................ 19

4 Cal. Practice Settlement
  §§ 22:1, 22:17, pp. 511, 525 (1968 ed.) ............................................................... 15

Cal. Bus. Code § 17200 ............................................................... 1, 9, 11, 14, 19, 20, 22

California Civil Code § 47(b) ............................................................................... 1

Fed. R. Civ. P. 12(c) ....................................................................................... 9, 20

Fed. R. Civ. P. 54(c) ....................................................................................... 8

Lanham § 43(a) ............................................................................................ 19, 20

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

iv

REDACTED PHILIPS LUMILEDS' MOTION FOR
JUDGMENT ON THE PLEADINGS
C 07-5194 CW

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE THAT on July 10, 2008 at 2:00 p.m., in Courtroom 2 before

3    the Honorable Claudia Wilken, located at 1301 Clay Street, Oakland, California 94612, or as

4    soon thereafter as counsel may be heard, Defendant and Counterclaimant Philips Lumileds

5    Lighting Company, LLC ("Lumileds") will and hereby does move the Court for a judgment on

6    the pleadings with respect to Plaintiff and Counterdefendant Epistar Corporation's ("Epistar's")

7    first, third, and fourth claims for unfair competition under the Lanham Act, intentional

8    interference with prospective economic advantage, and unfair competition under California

9    Business & Professions Code § 17200 (collectively, the "Unfair Competition Claims").

10   Lumileds seeks an order from the Court for a judgment on the pleadings dismissing with

11   prejudice each of Epistar's Unfair Competition Claims.

12

13   ## I.    **INTRODUCTION**

14   Pursuant to Federal Rule of Civil Procedure 12(c), Lumileds moves this Court for a

15   judgment on the pleadings and an order dismissing three of Epistar's claims with prejudice for

16   failure to state a claim as a matter of law.  Even taking all of Epistar's allegations in its pleadings

17   as true, Epistar's Unfair Competition Claims fail as a matter of law.

18   First, Epistar's Unfair Competition Claims are barred by the litigation privilege under

19   California Civil Code § 47(b).  This privilege immunizes parties from liability for torts arising

20   from all communications made in connection with judicial proceedings.  The case law establishes

21   that communications regarding the outcome of a judicial proceeding to parties with a substantial

22   interest in that outcome are subject to this privilege.  The purpose of this privilege is to afford

23   litigants the utmost freedom of access to the courts without fear of being harassed subsequently

24   by derivative tort actions – "litigation about litigation."  To achieve this vital purpose, the

25   litigation privilege is an absolute bar against claims like those asserted by Epistar in this matter.

26   Second, even if not barred by the litigation privilege, Epistar's Unfair Competition Claims

27   fail as a matter of law because Lumileds' letters are truthful and were communicated in good

28   faith.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6                    1                    REDACTED PHILIPS LUMILEDS' MOTION FOR
JUDGMENT ON THE PLEADINGS
C 07-5194 CW

## II.    **BACKGROUND**

### A.    **Prior District Court and ITC Litigation**

This case is the most recent in a long history of litigation between these parties. Lumileds will only discuss the cases directly relevant to the present motion for the sake of brevity.  For a detailed discussion of the other earlier cases, Lumileds invites the Court to look to its prior pleadings.[1]

On November 4, 2005, Lumileds filed a patent infringement suit in this Court against Epistar alleging infringement of Lumileds' U.S. Patent Nos. 5,008,718 (the "'718 Patent"), 5,376,580 (the "'580 Patent"), and 5,502,316 (the "'316 Patent").[2]  The Honorable Ronald M. Whyte granted Epistar's motion to stay the case pending the outcome of the ITC investigation pursuant to 28 U.S.C. § 1659.[3]  That related case remains stayed to this day.

Also on November 4, 2005, Lumileds filed a complaint before the United States International Trade Commission ("ITC" or "Commission") alleging that Epistar was violating Section 337, by importing, selling for importation, and selling within the United States after importation certain high-brightness light-emitting diodes ("LEDs") and products containing those LEDS that infringe Lumileds' '718, '580, and '316 patents.[4]  The ITC is an independent federal agency that, *inter alia*, adjudicates complaints brought by domestic industries under Section 337 of the Tariff Act of 1930 ("Section 337") that allege infringement of U.S. intellectual property rights in connection with imported goods.  The primary remedy available in Section 337 investigations is an exclusion order that directs U.S. Customs and Border Protection ("Customs") to block infringing imports from entering the United States.[5]

On May 9, 2007, the Commission determined that Epistar violated Section 337 in the unlawful importation, sale for importation, and sale after importation of high-brightness light

---

[1] *See* Philips Lumileds' Admin. Mot. to Consider Whether Cases Should Be Related 2-4 (filed Nov. 16, 2007), Dkt. No. 6; Notice of Mot. & Mot. for Stay 2-5 (filed Jan. 31, 2008), Dkt. No. 30.
[2] Related Case No. 05-4521.
[3] *See Lumileds Lighting U.S., LLC v. Epistar Corp. et al.*, No. 05-4521 (N.D. Cal. Feb. 24, 2006) (order granting Epistar's motion to stay).
[4] *See* Declaration of Ryan Scher in Support Hereof ("Scher Decl.") ¶ 2, Ex. A ¶ 1 (ITC Complaint).
[5] *See* 19 U.S.C. § 1337(d), 19 C.F.R. § 12.39(b)(2).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6                                    2                    REDACTED PHILIPS LUMILEDS' MOTION FOR
JUDGMENT ON THE PLEADINGS
C 07-5194 CW

1  emitting diodes that infringe claims 1 and 6 of the '718 patent.[6]  To protect Lumileds from unfair

2  competition by Epistar's infringement, the Commission issued a Limited Exclusion Order

3  ("Exclusion Order") "prohibiting the unlicensed entry of covered high-brightness light emitting

4  diodes manufactured by or on behalf of Epistar, packaged LEDs containing the infringing high-

5  brightness light emitting diodes, and boards primarily consisting of arrays of such packaged

6  LEDs."[7]

7

8      **B.    Lumileds' Letters**

9      Because the ITC Exclusion Order precludes any entity – not just Epistar – from importing

10  Epistar's infringing products, Lumileds sought to notify potential importers of Epistar's products

11  of the Exclusion Order.  After the ITC issued its Exclusion Order, Lumileds sent letters to certain

12  "sellers, purchasers, manufacturers, and distributors of high-brightness AlGaInP light-emitting

13  diodes (LEDs) and products incorporating those LEDs."[8]  These letters advised the recipients of

14  Lumileds' intellectual property rights, the results of the Epistar ITC proceeding, and the potential

15  effect of the Exclusion Order on the recipients of the letter – including importation restrictions

16  and liability for direct infringement.  To avoid any possibility of confusion, Lumileds included

17  the ITC's Notice of Decision and Exclusion Order as an attachment to the Letters.[9]

18      Epistar advised the ITC and Federal Circuit that Lumileds sent these letters in its Motion

19  to Stay.[10]

---

20  [6] Scher Decl. ¶ 3, Ex. B 1 (Exclusion Order).
    [7] *Id*.
21  [8] Scher Decl. ¶ 6, Ex. E 4 (May Letter).
    [9] *See* Scher Decl. ¶ 6, Ex. E 3 (June Letter).
22  [10] Although Epistar submitted separate motions to the ITC (Scher Decl. ¶ 4, Ex. C) and the
    Federal Circuit (Scher Decl. ¶ 5, Ex. D), these two motions are substantively identical with
23  identical pagination.  For the purposes of the present motion, Lumileds will refer to both of
    Epistar's motions as the "Motion to Stay."  Two examples of Lumileds' letters were attached to
24  the Motion to Stay as Exhibits N and P (Scher Decl. ¶ 6, Ex. E).  Lumileds' has preserved
    Epistar's original confidentiality designation of these letters.  Exhibit N contains two letters, one
25  dated May 24, 2007 ("May Letter"), and one dated June 2007 ("June Letter").  The letter at
    Exhibit P dated June 2007 is substantively identical to the June Letter at Exhibit N.  For the
26  purposes of this motion, Lumileds will refer to the two letters dated June, 2007 as the "June
    Letter."  In addition to the two letters relied upon by Epistar before the ITC, Lumileds sent out
27  letters in six other formats that were identical for purposes of Epistar's claim and the instant
    motion.  Declaration of Jim Thompson ("Thompson Decl.") ¶ 4.  Representative samples of these
28  letters are attached to the Thompson Declaration as Exhibits A-F.  The identifying information

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6                        3                        REDACTED PHILIPS LUMILEDS' MOTION FOR
                                                              JUDGMENT ON THE PLEADINGS
                                                              C 07-5194 CW

1    Epistar alleges that Lumileds misled the letter recipients to believe that the ITC

2  "determined that all of Epistar's products infringe all of the patents that were at issue in the ITC"

3  when "only six of Epistar's products were even considered by the ITC in the investigation."[11]

4  Contrary to Epistar's allegations, the letters *explicitly* enumerate (1) the specific Epistar products

5  that the ITC identified in its Exclusion Order and (2) the specific patent infringed:

6        • The U.S. International Trade Commission (ITC) issued a Notice
7          of Commission Decision on May 9, 2007, in which it found that
          all of Epistar's *OMA, MB and GB LED products* infringe
8          Philips Lumileds' *'718 Patent.*[12]

9        • Further, the ITC ruled that all of Epistar's accused products,
          including all known versions of Epistar's *OMA, MB, and GB*
          *AlGaInP LEDs*, infringe Philips Lumileds' *'718 patent.*[13]

10    Epistar appears to contend that it has developed newer products that were not expressly

11 addressed in the ITC's Exclusion Order.  If Epistar had any high-brightness AlGaInP LED

12 products in addition to its OMA, MB, and GB LEDs, it failed to identify them in connection with

13 the ITC action, which it was required to do.  In response to Lumileds' *first* interrogatory in that

14 proceeding,[14] Epistar formally identified *all* of its past, current, and future AlGaInP LED products

15 (the "Accused AlGaInP LEDs"[15]) to Lumileds and the Commission by March 3, 2006 – ███

16 ███████████████████████████████[16]  If Epistar developed *any* new

17 AlGaInP LED products during the course of the investigation, it was obligated to supplement its

18 interrogatory responses pursuant to 19 C.F.R. § 210.27(c)(1) and Ground Rule 2(s).[17]  Based on

19 ────────────────────────────────────────────

20 contained in the letters has been redacted to protect the privacy interests of the respective
   recipients.  Incidentally, this is in line with the approach taken by Epistar in its Exhibits N and P
   to its Motion to Stay.  *See* Scher Decl. ¶ 6, Ex. E 2 (evidencing redactions).

21 [11] Compl. ¶ 12.

22 [12] Scher Decl. ¶ 6, Ex. E 2 (June Letter) (emphasis added).
   [13] Scher Decl. ¶ 6, Ex. E 4 (May Letter) (emphasis altered from original).

23 [14] Scher Decl. ¶ 10, Ex. I 4 Interrog. No. 1 (Lumileds' First Set of Interrog.)  ████████
   ███████████████████████████

24 [15] *See* Scher Decl. ¶ 10, Ex. I 3 def. K ████████████████████████████

25 ████████████████████████████████████████████████████

26 [16] *See* Scher Decl. ¶¶ 11 & 12, Ex. J 4-7 (Epistar's Resp. to Lumileds' First Set of Interrog.), Ex.
   K at 4-7 (Epistar's Supp. Resp. to Lumileds' First Set of Interrog.).

27 [17] Ground Rule 2(s) specifies that "[a] party who has responded to a request for discovery with a
   response that was complete when made is under a duty to seasonably supplement his response to

28 include information thereafter acquired."  Scher Decl. ¶ 13, Ex. L 5.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6                    4           REDACTED PHILIPS LUMILEDS' MOTION FOR
                                              JUDGMENT ON THE PLEADINGS
                                              C 07-5194 CW

1    Epistar's binding discovery responses, this supplementation obligation, and the text of the

2    Exclusion Order, Lumileds' letters explain that "Epistar's high-brightness AlInGaP LEDs have

3    been found to infringe Philips Lumileds' U.S. Patent 5,008,718 . . . ."[18]  If Epistar was developing

4    any additional AlGaInP LEDs beyond the family of MB, GB, and OMA LEDs that were being

5    sold at the time the letters were written, it was required to identify them.  Lumileds should not be

6    punished for Epistar's failure to comply with 19 C.F.R. § 210.27(c)(1) and Ground Rule 2(s).

7    In addition to the ITC's conclusion that Epistar's AlGaInP LED's infringe, Lumileds has a

8    pending, stayed action in this Court against Epistar for infringement of the '718, '580, and '316

9    patents. [19]  Once the stay in this case is lifted, Lumileds will pursue these additional infringement

10    claims vigorously.[20]  Thus, Lumileds' statement that "Epistar's high-brightness AlInGaP LEDs

11    have been *found to infringe* Philips Lumileds' U.S. Patent 5,008,718 ("718 patent) and *are also*

12    *infringing* other Philips Lumileds patents on the use of wafer bonding to manufacture transparent-

13    substrate and mirrored-substrate AlInGaP LEDs (U.S. Patent Nos. 5,376,580 and 5,502,316)" is

14    entirely accurate.[21]  Any even alleged confusion regarding the scope of the ITC's determination

15    would immediately be resolved by reading the *next sentence*: "The U.S. International Trade

16    Commission (ITC) issued a Notice of Commission Decision on May 9, 2007, in which it found

17    that all of Epistar's OMA, MB and GB LED products infringe Philips Lumileds' '718 Patent."[22]

18    And, as an additional precaution against any confusion, Lumileds attached a copy of the ITC's

19    Notice of Decision and Exclusion Order to the letters.[23]

20    Epistar further alleges that Lumileds' letters were misleading "about the scope of the Final

21    Determination and the limited exclusion order . . . ."[24]  To the contrary, a comparison

22    demonstrates the fidelity of Lumileds' letters to the Commission's Order.  The Letters' discussion

23

24    [18] Scher Decl. ¶ 6, Ex. E 2 (June Letter).
       [19] All of Lumileds' asserted patents are directed to high-brightness AlGaInP LEDs.  The '580 and
25    '316 patents are directed to wafer-bonding used to manufacture transparent-substrate and
       mirrored-substrate LEDs.
26    [20] The ITC's determination does not preclude Lumileds from pursuing claims in the District Court
       action. *Bio-Tech. Gen. Corp. et al. v. Genentech, Inc.*, 80 F.3d 1553, 1564 (Fed. Cir. 1996).
27    [21] Scher Decl. ¶ 6, Ex. E 2 (June Letter) (emphasis added).
       [22] Scher Decl. ¶ 6, Ex. E 2 (June Letter).
28    [23] *See* Scher Decl. ¶ 6, Ex. E 3 (June Letter).
       [24] Compl. ¶ 12.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6                                5                REDACTED PHILIPS LUMILEDS' MOTION FOR
                                                              JUDGMENT ON THE PLEADINGS
                                                              C 07-5194 CW

of the Exclusion Order's scope is either quoted verbatim or slightly paraphrased from the

Exclusion Order itself:

| May Letter | Limited Exclusion Order |
|---|---|
| "[T]he ITC issued a Limited Exclusion Order prohibiting importation of infringing LEDs <u>manufactured by or on behalf of Epistar, its affiliated companies, parents, subsidiaries, licensees, contractors, or other related business entities</u>.  The exclusion order also prohibits importation of <u>packaged LEDs containing the infringing LEDs and boards primarily consisting of arrays of such packaged LEDs</u>,[25] regardless of the identity of the party seeking to import or purchase after importation such packages, boards, or arrays.  Further, the Commission ordered that, during the upcoming period for <u>Presidential review of the Commission's decision, the amount of bond required to permit even temporary importation will be in the amount of 100% of the value of the LEDs or boards</u> that are subject to the exclusion order."[26] | "1.  High-brightness light emitting diodes that are covered by one or more of claims 1 and 6 of U.S. Patent No. 5,008,718 and are <u>manufactured abroad or imported by or on behalf of Epistar or any of its affiliated companies, parents, subsidiaries, contractors, or other related business entities</u>, or their assigns, including <u>packaged LEDs containing the infringing LEDs and boards primarily consisting of arrays of such packaged LEDs</u>, are excluded from entry for consumption into the United States . . . ."[27]<br><br>"The Commission has determined that the public interest factors enumerated in 19 U.S.C. § 1337(d) do not preclude issuance of the limited exclusion order and that the <u>bond during the Presidential review period shall be in the amount of 100% of the entered value of each LED whether imported singly, packaged, or as part of a board</u>."[28] |

Again, any confusion regarding the "scope of the Final Determination and the limited

exclusion order" that could have resulted from Lumileds' *quotation* of the Exclusion Order would

immediately be remedied by reading the copy of the ITC's Notice of Decision and Exclusion

Order that Lumileds sent accompanying the letters. [29]


### C.    Epistar's Motion to Stay

On July 13, 2007, Epistar moved both the ITC and the Federal Circuit to stay the

---

[25] *See also* Scher Decl. ¶ 6, Ex. E 2 (June Letter) ("Because of this infringement, the ITC has issued an Exclusion Order prohibiting the importation into the United States of these Epistar LEDs, packaged LEDs and lamps containing the infringing LEDs, and boards consisting primarily of arrays of such packaged LEDs.").
[26] Scher Decl. ¶ 6, Ex. E 4-5 (May Letter) (emphasis added).
[27] Scher Decl. ¶ 3, Ex. B 2 ¶ 1 (Exclusion Order) (emphasis added).
[28] Scher Decl. ¶ 3, Ex. B 1-2 (Exclusion Order) (emphasis added).
[29] *See* Scher Decl. ¶ 6, Ex. E 3 (June Letter).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6                                6                    REDACTED PHILIPS LUMILEDS' MOTION FOR
JUDGMENT ON THE PLEADINGS
C 07-5194 CW

1    Exclusion Order pending appeal ("Motion to Stay").[30]  Arguing that equity favors a stay, Epistar

2    alleged that Lumileds sent letters to Epistar's customers "notifying them of the infringement

3    findings and Exclusion Order, and implying that it would not be prudent to continue to purchase

4    Epistar LEDs or use them in their products."[31]  According to Epistar, this was a relevant equitable

5    consideration that strongly favored a stay.[32]  Both the ITC and the Federal Circuit found Epistar's

6    arguments unpersuasive.  On August 20, 2007, the Commission sought to put an immediate stop

7    to Epistar's ongoing unfair competition by denying Epistar's Motion to Stay.[33]  The Federal

8    Circuit denied Epistar's Motion on September 28, 2007.[34]

9         On October 10, 2007 – less than two weeks after the Federal Circuit's denial – Epistar

10   filed the present complaint that includes three causes of action premised on these same letters.

11   Epistar *now* argues to this court that these same letters do *not* notify customers of the

12   infringement findings and the Exclusion Order.  Instead, Epistar alleges that these letters are in

13   fact *false* – so much so as to warrant punitive damages.[35]  Epistar's changing of its

14   characterization from "notify" to "misleading" is a transparent attempt to try to silence any

15   discussion about, and undermine the effectiveness of, the Exclusion Order.

16

17        **D.    Epistar's Pattern of Asserting Meritless Claims**

18        Epistar has previously asserted similar tort claims that were found by this Court to be

19   unsupportable and/or improper.  For example, during the prior district court litigation between

20   Epistar and Lumileds, Epistar contended, generally, that Lumileds' assertion of its patent rights

21   was improperly interfering with Epistar's customer relationships.  In rejecting those claims, this

22   Court stated:

23             You characterize it the way you do, but the way I see it is simply
             the legitimate monopoly of a patentholder to – that's what a patent
24             is – is a lawful monopoly for 17 years – and the patentholder is

25   ───────────────
     [30] *See* Scher Decl. ¶ 4 & 5, Ex. C & D.
26   [31] Scher Decl. ¶¶ 4 & 5, Ex. C 19, D 19.
     [32] Scher Decl. ¶¶ 4 & 5, Ex. C 18-19, D 18-19 (Mot. to Stay).
27   [33] Scher Decl. ¶¶ 7 & 8, Ex. F (order denying Epistar's Mot. to Stay), Ex. G (Comm'n Op. on
     Den. of Mot. for Stay).
28   [34] Scher Decl. ¶ 9, Ex. H (order denying Epistar's Mot. to Stay).
     [35] Compl. ¶ 35.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6                    7                    REDACTED PHILIPS LUMILEDS' MOTION FOR
                                                       JUDGMENT ON THE PLEADINGS
                                                       C 07-5194 CW

allowed to protect its sanctioned monopoly.

And if it sues you, that's what it's entitled to do. If it sues your customers because they're using infringing items, that's what it's entitled to do. If in so doing, it prevents your customers from buying infringing things from you, then that's what it's entitled to do.

Yes it has to do it in good faith. Yes, it can't do it in an objectively unreasonable fashion, but that – but unless that is what it is, then it's what it's entitled to do.[36]

Lumileds moved for judgment on the pleadings and this Court granted the motion, dismissing the claims but giving Epistar the opportunity to amend *if* they could be claimed based on a different theory.[37] Instead, Epistar re-filed the counterclaims and moved for reconsideration.[38] The Court noted that this filing was improper:

Epistar's amended answer was not properly filed, because unless the Court grants the motion for reconsideration, Epistar must abide by the Court's ruling on Lumileds' motion for partial judgment on the pleadings. Even if the amended answer was filed in reliance on the Court's comments at the hearing, it was not proper to base it on a theory the Court had rejected.[39]

Although the Court allowed additional briefing, it ultimately granted Lumileds' motion to dismiss these claims as well.[40]

## III.    LEGAL STANDARD FOR JUDGMENT ON THE PLEADINGS

A party may move for a judgment on the pleadings after the pleadings close and before

---

[36] Scher Decl. ¶ 14, Ex. M 13-14 (Hearing Tr.).

[37] Order Consol. Cases, Granting Lumileds' Mot. for Partial J. on the Pleadings, and Granting Epistar Leave to File Amended Answer, *Lumileds Lighting U.S., LLC v. Epistar Corp.*, No. C 02-5077 CW, Aug. 13, 2003, Dkt. No. 95.

[38] Order Granting Epistar Corp.'s Mot. for Leave to File for Reconsideration and Taking Lumileds' Mot. to Dismiss the Second through Fifth Counterclaims of Epistar's Amended Compl. under Submission 2-3 (describing the case history), *Lumileds Lighting U.S., LLC v. Epistar Corp.*, No. C 02-5077, Nov. 12, 2003, Dkt. No. 207.

[39] *Id.* at 7.

[40] *See e.g.*, Order Denying Epistar Corp.'s Mot. for Reconsideration and Granting Lumileds' Mot. to Dismiss the Second through Fifth Counterclaims of Epistar's Amended Compl., *Lumileds Lighting U.S., LLC v. Epistar Corp.*, No. C 02-5077, Feb. 12, 2004, Dkt. No. 325 (granting Lumileds' second motion to dismiss). Epistar later moved for separate judgment under Fed. R. Civ. P. 54(c), so that it could appeal; this Court denied that motion. Order Denying Epistar's Mot. for Entry of Separate J., *Lumileds Lighting U.S., LLC v. Epistar Corp.*, No. C 02-5077, June 2, 2004, Dkt. No. 508.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6                                8                    REDACTED PHILIPS LUMILEDS' MOTION FOR
JUDGMENT ON THE PLEADINGS
C 07-5194 CW

1   the trial commences.[41]  A judgment on the pleadings is appropriate when, even if all allegations in

2   the complaint are true, the moving party is entitled to judgment as a matter of law.[42]

3       Epistar's Unfair Competition Claims are based on letters sent by Lumileds "to Epistar's

4   customers and potential customers" after the entry of the Final Determination in the ITC.[43]  Even

5   though Epistar did not attach the letters underlying its Unfair Competition Claims to the

6   complaint, the Court may consider them for the purpose of deciding this motion for judgment on

7   the pleadings without converting the motion to a motion for summary judgment.[44]

8

9   **IV.    EPISTAR'S UNFAIR COMPETITION CLAIMS ARE BARRED BY THE
        LITIGATION PRIVILEGE AS A MATTER OF LAW**

10      Lumileds' letters regarding the ITC litigation are absolutely protected by the litigation

11  privilege.  California's litigation privilege provides *absolute immunity* to communications made

12  in or related to judicial proceedings.[45]  This privilege has been given an expansive reach by

13  California courts, and applies to all torts except malicious prosecution actions.[46]  The privilege

14  was created "to afford litigants . . . the utmost freedom of access to the courts without fear of

15  being harassed subsequently by derivative tort actions."[47]  The applicability of the privilege is a

16  question of law.[48]  And, "[a]ny doubt about whether the privilege applies is resolved in favor of

17  applying it."[49]

18      Section 47(b) of the California Civil Code defines a privileged publication or broadcast as

19  one that is made: "In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other

20  official proceeding authorized by law, or (4) in the initiation or course of any other proceeding

21  authorized by law and reviewable pursuant to Chapter 2 . . . ."[50]  The Supreme Court of California

---

[41] Fed. R. Civ. P. 12(c).
[42] *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).
[43] *See* Compl. ¶ 12.
[44] *Parrino v. FHP, Inc. et al.*, 146 F.3d 699, 706 (9th Cir. 1998).
[45] *Sharper Image Corp. v. Target Corp. et al.*, 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) (Judge Wilken presiding); *see* Cal. Civ. Code § 47(b) (2008).
[46] *Rubin v. Green et al.*, 4 Cal. 4th 1187, 1193-1194 (1993).
[47] *Silberg v. Anderson*, 50 Cal.3d 205, 213 (1990).
[48] *Kashian v. Harriman et al.*, 98 Cal. App. 4th 892, 913 (Ct. App. 2002) (citing *Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1139-1140 (Ct. App. 1996)).
[49] *Id.* (citing *Adams v. Super. Ct.*, 2 Cal. App. 4th 521, 529 (Ct. App. 1992)).
[50] Cal. Civ. Code § 47(b) (2008).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6                    9                    REDACTED PHILIPS LUMILEDS' MOTION FOR
                                                       JUDGMENT ON THE PLEADINGS
                                                       C 07-5194 CW

1   has explained that the litigation privilege applies to "any communication (1) made in judicial or

2   quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve

3   the objects of the litigation; and (4) that have some connection or logical relation to the action."[51]

4   "If the publication has a reasonable relation to the action and is permitted by law, the absolute

5   privilege attaches."[52]

6

7   **A.    Lumileds' letters are absolutely protected by the litigation privilege because
        they concern the ITC Action.**

8

9   Under the first prong articulated by the Supreme Court of California in *Silberg*, the

10  privilege "applies to any publication required or permitted by law in the course of a judicial

11  proceeding to achieve the objects of the litigation, even though the publication is made outside

12  the courtroom and no function of the court or its officers is involved."[53]  Lumileds satisfies this

13  prong of the litigation privilege: the letters directly discuss the ITC litigation, as expressly

    acknowledged by Epistar.[54]

14

15  **B.    Lumileds' letters are absolutely protected by the litigation privilege because
        the recipients possessed a substantial interest in the outcome of the ITC
        Action.**

16

17  With respect to the second prong, this Court has explained that "non-litigants possessing a

18  'substantial interest in the outcome of the litigation' are 'authorized participants' for purposes of

    the litigation privilege."[55]  Thus, to meet the second prong of the litigation privilege, Lumileds

19

20  [51] *Silberg*, 50 Cal. 3d at 212; *see Healy v. Tuscany Hills Landscape & Recreation Corp.*, 137 Cal.
    App. 4th 1, 5 (Ct. App. 2006) (citing *Rubin*, 4 Cal. 4th at 1193) ("[I]t has been established for

21  well over a century that a communication is absolutely immune from any tort liability if it has
    'some relation' to judicial proceedings.").

22  [52] *Rothman*, 49 Cal. App. 4th at 1142.
    [53] *Silberg*, 50 Cal. 3d at 212.

23  [54] *See* Compl. ¶ 12 (alleging that the letters relate to the ITC's Final Determination and Exclusion
    Order); *Silberg*, 50 Cal. 3d at 213 ("Since the 'external threat of liability is destructive of this

24  fundamental right [of open communications] and inconsistent with the effective administration of
    justice' [citation omitted], courts have applied the privilege to eliminate the threat of liability for

25  communications made during all kinds of truth-seeking proceedings: judicial, quasi-judicial,
    legislative and other official proceedings.") (citing *McClatchy Newspapers, Inc. et al. v. Super.

26  Ct.*, 189 Cal. App. 3d 961, 970 (Ct. App. 1987)).
    [55] *Sharper Image*, 425 F. Supp. 2d at 1077-1078 (citing *Costa v. Super. Ct.*, 157 Cal. App. 3d

27  673, 678 (Ct. App. 1984), *Adams*, 2 Cal. App. 4th at 529 (noting that "the privilege is not
    restricted to the parties in the lawsuit but need merely be connected or related to the proceedings

28  [.]").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6                    10                    REDACTED PHILIPS LUMILEDS' MOTION FOR
                                                       JUDGMENT ON THE PLEADINGS
                                                       C 07-5194 CW

1    "need only show that the recipients of its letter possessed a 'substantial interest' in the

2    litigation."[56]

3        In *Sharper Image v. Target Corp.*, this Court found that the litigation privilege applied as

4    an absolute bar to claims of tortious interference with economic advantage and unfair competition

5    under the Cal. Bus. & Prof. Code § 17200.[57]  In that case, Sharper Image sent emails and letters to

6    retailers and media outlets, informing them of the pending patent infringement lawsuit against the

7    manufacturers and retailers of the allegedly infringing Ionic Pro product, and asking them not to

8    carry the Ionic Pro.[58]  The parties' dispute concerned whether the second prong of the litigation

9    privilege test applied.[59]  This Court explained:

> Even if Plaintiff's threats against them were not serious, the retailer
> and media recipients possessed a substantial interest in the
> underlying dispute. At that time, Plaintiff was seeking injunctive
> relief which, if granted, would have significantly disrupted the
> recipients' business arrangements with Defendants.  Furthermore,
> even if Plaintiff did not intend to follow through on its threats to
> sue the recipients for infringement, a finding by the Court that the
> Ionic Pro likely infringed Plaintiff's patents would have
> significantly increased the legal liability of the letter recipients . . . .
> Although their interest in the underlying action may not have been
> as great as that of Ionic Pro retailers, the media outlets faced a
> potential disruption if the Court had granted the injunctive relief
> sought by Plaintiff.[60]

17   Thus, this Court found that the retailers and media recipients were authorized participants in the

18   existing litigation between Sharper Image and the manufacturers of the Ionic Pro because they

19   possessed a substantial interest in the outcome of the litigation.[61]  Since this Court issued its

20   decision in *Sharper Image*, at least two courts have followed its reasoning and conclusions.[62]

---

[56] *Sharper Image*, 425 F. Supp. 2d at 1078.
[57] *Id.* at 1079.
[58] *Id.* at 1075.
[59] *Id.* at 1077.
[60] *Id.* at 1079.
[61] *Id.* at 1078-1079.  The recipients of Lumileds' letters have a far greater interest in the underlying dispute than did the recipients in *Sharper Image*.  When the communications in *Sharper Image* were made, the underlying dispute was *still pending* – it was possible that the recipients might never have been affected by the matter.  *Id.* at 1075-1076.  Here, the ITC has already found infringement and issued an Exclusion Order.  The letter recipients may presently be at risk of having their products blocked from importation by Customs.
[62] *See Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., LLC*, 2007 U.S. Dist. LEXIS 37665, *34-*35 (N.D. Cal. 2007); *Bylin Heating Sys. et al. v. M&M Gutters, LLC et al.*, 2008 U.S. Dist. LEXIS 21253, *10-*12 (E.D. Cal. 2008) (stating that "[t]he litigation privilege unequivocally applies to communications to third parties with a substantial interest in the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6                          11                    REDACTED PHILIPS LUMILEDS' MOTION FOR
JUDGMENT ON THE PLEADINGS
C 07-5194 CW

1   This case is on all fours with *Sharper Image*. Epistar alleges that Lumileds' letters were

2   sent to Epistar's present and potential customers.[63] Taking Epistar's allegation as true, the

3   recipients have a substantial interest in the outcome of the ITC litigation. Not only will the

4   Exclusion Order significantly disrupt the recipients' business arrangements with Epistar,[64] their

5   product supply,[65] and their potential infringement liability[66] – a portion of their business has

6   actually been *outlawed* by the ITC. The products they are purchasing and/or would potentially

7   purchase are now "excluded from entry for consumption in the United States, entry for

8   consumption from a foreign-trade zone, or withdrawal from a warehouse for consumption . . . ."[67]

9   There can be no debate that any entity facing an immediate threat of being stopped at the border

10  by Customs directly due to the ITC's Exclusion Order has a "substantial interest" in the ITC

11  litigation. Accordingly, the second prong is satisfied.

12

13      C.      **Lumileds' letters are absolutely protected by the litigation privilege because**
               **they function as a necessary step in the ITC process and serve its purposes.**

14

15      The third prong of the litigation privilege has been characterized by the Supreme Court of

16  ────────────────────────────────────────────────
    outcome of *pending* litigation.") (emphasis in original). In *Reid-Ashman*, Swanson
    counterclaimed for, *inter alia*, tortious interference with ongoing business relations and

17  prospective economic advantage on the basis that Reid-Ashman had contacted and continued to
    contact Swanson's customers, "claiming that Swanson has infringed Reid-Ashman's patent and

18  making 'veiled threats' to sue these prospective customers if they purchase Swanson's [product]."
    *Reid-Ashman*, 2007 U.S. Dist. LEXIS 37665 at *8. In explaining that "[i]t is clear that the

19  litigation privilege applies to the statements made *after* the lawsuit was initiated," the court cited
    the possible interruption of the customer's product supply and potential legal liability as factors

20  demonstrating the customer's interest in the litigation. *Id.* at *34-*35 (emphasis in original). The
    Court dismissed Swanson's tortious interference claims based on statements made to customers

21  after the lawsuit was initiated on the grounds that these statements are protected under the
    litigation privilege. *Id.* at *38.

22  [63] Compl. ¶ 12.
    [64] *See Sharper Image*, 425 F. Supp. 2d at 1079.

23  [65] *See Id.*; *Bylin Heating*, 2008 U.S. Dist. LEXIS 21253 at *12.
    [66] *See Sharper Image*, 425 F. Supp. 2d at 1079; *Bylin Heating*, 2008 U.S. Dist. LEXIS 21253 at

24  *12; *Avery Dennison Corp. v. Acco Brands, Inc.*, 2000 U.S. Dist. LEXIS 3938, *28 (C.D. Cal.
    2000) ("The statements in the letters directly discuss the current litigation. They inform the

25  recipients of the claims in the pending litigation and of the bases for these claims . . . . Here, the
    Letters to the customers function as at least a useful step in the litigation process by informing

26  these customers of potential liability."); *see also Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d
    860, 869 (Fed. Cir. 1997) ("[A] patentee must be allowed to make its rights known to a potential

27  infringer so that the latter can determine whether to cease its allegedly infringing activities,
    negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of
    an injunction.").

28  [67] Scher Decl. ¶ 3, Ex. B 2 (Exclusion Order).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6          12          REDACTED PHILIPS LUMILEDS' MOTION FOR
                                    JUDGMENT ON THE PLEADINGS
                                    C 07-5194 CW

1   California as being "'simply part of' the fourth," requiring the "communication to be connected

2   with, or have some logical relation to, the action."[68]  As the Court explained, "the 'furtherance'

3   requirement was never intended as a test of a participant's motives, morals, ethics or intent."[69]  In

4   other words, the communication must "function as a necessary or useful step in the litigation

5   process and must serve its purposes."[70]

6       The primary remedy available in ITC Section 337 investigations is an exclusion order that

7   directs Customs to stop infringing imports from entering the United States.[71]  Lumileds obtained

8   an Exclusion Order prohibiting importation of Epistar's infringing LEDs "manufactured abroad

9   or imported by or on behalf of Epistar or any of its affiliated companies, parents, subsidiaries,

10  contractors, or other business entities . . . ."[72]  Thereafter, Lumileds sent letters to these entities to

11  inform them of the importation ban – a necessary step in the enforcement of the Exclusion

12  Order.[73]  Lumileds' letters are unquestionably related to the ITC action and function as a

13  necessary step in the litigation process; the third and fourth prongs of the litigation privilege

14  analysis therefore are satisfied.

15      Moreover, courts have consistently found that the litigation privilege protects

16  correspondence to third parties regarding patent rights.  In *eCash Technologies v. Guagliardo*,

17  Guagliardo registered eCash Technologies' "eCash" trademark as a domain name (eCash.com),

18  and then submitted the name for auction on the domain-name auctioning website Afternic.com.[74]

19  eCash's counsel sent a letter to Afternic.com notifying the website of eCash's pending lawsuit

20  against Guagliardo for infringement of its "eCash" mark.[75]  In the infringement suit, Guagliardo

21  [68] *Rothman*, 49 Cal. App. 4th at 1141 (citing *Silberg*, 50 Cal. 3d at 219-220).
22  [69] *Silberg*, 50 Cal. 3d at 220; *see Blanchard v. DIRECTV, Inc. et al.*, 123 Cal. App. 4th 903, 921 (Ct. App. 2004) (stating that Plaintiff's allegation that demand letters were sent for the purpose of coercing a statement is irrelevant, as "'communications made in connection with litigation do not
23  necessarily fall outside the privilege merely because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal' assuming they are logically related to litigation.") (quoting
24  *Kashian*, 98 Cal. App. 4th at 920).
    [70] *Rothman*, 49 Cal. App. 4th at 1146.
25  [71] *See* 19 U.S.C. § 1337(d), 19 C.F.R. § 12.39(b)(2).
    [72] Scher Decl. ¶ 3, Ex. B ¶ 1 (Exclusion Order).
26  [73] *See* Scher Decl. ¶ 6, Ex. E 4 (May Letter) ("This letter is directed to sellers, purchasers, manufacturers, and distributors of high-brightness AlGaInP light-emitting diodes (LEDs) and
27  products incorporating those LEDs.").
    [74] *eCash Techs., Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1145-1146 (C.D. Cal. 2000).
28  [75] *Id.* at 1146-1147.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

REDACTED PHILIPS LUMILEDS' MOTION FOR
JUDGMENT ON THE PLEADINGS
C 07-5194 CW

1    counterclaimed for unfair and/or unlawful business practices under Cal. Bus. Code § 17200 and

2    unfair competition based on the letter.[76]  The court found that Guagliardo's claims were barred as

3    a matter of law: "[A] communication merely informing a third party of the pendency of this

4    litigation must clearly fall within the privilege.  Even if it did not, there is nothing 'false or

5    misleading' about the contents of the letter.  The letter merely states what is clearly true, that

6    litigation regarding Plaintiff's and Defendants' rights to the 'eCash' mark was at the time ongoing

7    in federal court."[77]

8

9        **D.    Epistar's attempt to "plead around" the litigation privilege by alleging unfair**
        **competition fails as a matter of law.**

10

        The Supreme Court of California has expressly forbidden reliance on unfair competition

11   law to pursue an action prohibited by the litigation privilege of Civil Code section 47(b): "When

12   specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition

13   law to assault that harbor."[78]  In explaining this rule of law, the Court discussed *Rubin v. Green*:[79]

14

15           In [*Rubin v. Green*], the plaintiff relied on the unfair competition
             law to pursue an action that the litigation privilege of Civil Code
16           section 47, subdivision (b), otherwise prohibited. We "rejected the
             claim that a plaintiff may, in effect, 'plead around' absolute barriers
17           to relief by relabeling the nature of the action as one brought under
             the unfair competition statute." [citation omitted].  A bar against an
18           action "may not be circumvented by recasting the action as one
             under Business and Professions Code section 17200." [citation
19           omitted].  *We found "the conduct of defendants alleged in the
             complaint" came "within the scope of [Civil Code] section 47(b),"*
20           *and thus was "absolutely immune from civil tort liability . . . . To*
             *permit the same . . . acts to be the subject of an injunctive relief*
21           *proceeding brought by this same plaintiff under the unfair*
             *competition statute undermines that immunity.*  If the policies
22           underlying section 47(b) are sufficiently strong to support an
             absolute privilege, the resulting immunity should not evaporate
23           merely because the plaintiff discovers a conveniently different label
             for pleading what is in substance an identical grievance arising
24           from identical conduct as that protected by section 47(b)."[80]

     As detailed above, Lumileds' letters are absolutely protected by the litigation privilege.  Epistar
25

26   [76] *Id.* at 1142.
     [77] *Id.* at 1152.
27   [78] *Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999).
     [79] *Rubin v. Green*, 4 Cal. 4th 1187 (1993).
28   [80] *Cel-Tech*, 20 Cal. 4th at 182 (emphasis added) (citing and quoting *Rubin*, 4 Cal. 4th at 1201-
     1203).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6                    14                      REDACTED PHILIPS LUMILEDS' MOTION FOR
                                                              JUDGMENT ON THE PLEADINGS
                                                                      C 07-5194 CW

"may . . . not 'plead around' an 'absolute bar to relief' simply 'by recasting the cause of action for unfair competition.'"[81]  Epistar's Unfair Competition Claims fail as a matter of law.

### E.    The underlying policy of the litigation privilege supports absolute protection for Lumileds' letters.

A finding that the litigation privilege applies to Lumileds' Letters furthers the underlying policies of the privilege.  The Supreme Court of California has stated that the principle purpose of the litigation privilege is "to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions."[82]  Here, Lumileds successfully accessed the ITC's protection against Epistar's patent infringement and unfair competition, and is now subsequently being harassed by Epistar in this derivative tort action – the very situation against which the privilege is meant to protect.

Lumileds' letters advise the recipients of their potential liability for patent infringement and importation violations; the letters then warn the recipients that Lumileds will aggressively pursue its rights in court.[83]  Considering the nature and judicial efficiency of such demand letters, courts have consistently afforded them absolute immunity:

> As any competent attorney is aware, access to the courts is not an end in itself but only one means to achieve satisfaction for a client. If this can be obtained without resort to the courts – even without the filing of a lawsuit – it is incumbent upon the attorney to pursue such a course of action first.  [citations omitted].  It is equally well established legal practice to communicate promptly with a potential adversary, setting out the claims made upon him, urging settlement, and warning of the alternative of judicial action.[84]

Lumileds' letters explain Lumileds' possible causes of action against the recipients and warn the recipients of Lumileds' intention to pursue its rights in court.  Lumileds should not be held tortiously liable for complying with its "incumbent duty" to pursue its rights outside of the court,

---

[81] *Cel-Tech*, 20 Cal. 4th at 182 (citing *Mfrs. Life Ins. Co. et al. v. Super. Ct.*, 10 Cal. 4th 257, 283 (1995)).

[82] *Silberg*, 50 Cal. 3d 205 at 213.

[83] *See* Scher Decl. ¶ 6, Ex. E 2, 5.

[84] *Lerette v. Dean Witter Org., Inc. et al.*, 60 Cal. App. 3d 573, 577 (citing ABA Code of Prof. Ethics, canon 15; Cal. State Bar, Rules Prof. Conduct, rule 6-101(2); 4 Cal. Practice Settlement §§ 22:1, 22:17, pp. 511, 525 (1968 ed.)); *see also Hagendorf v. Brown et al.*, 699 F.2d 478, 480 (9th Cir. 1983) (stating that "counsel has a duty to seek settlement of a dispute without resort to the courts, and a demand is an established method of doing so.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6          15          REDACTED PHILIPS LUMILEDS' MOTION FOR
JUDGMENT ON THE PLEADINGS
C 07-5194 CW

1    or for complying with the "well established legal practice" of sending demand letters.

2         Finally, imposing tort liability based on such letters would inhibit patent holders from

3    attempting to protect their rights.  The Federal Circuit has explained that patent owners have the

4    right to enforce their patents, which includes the right to threaten alleged infringers with suit.[85]

5    Likewise, the Federal Circuit has noted that accused infringers should not be "insulated from

6    knowledge and fair warning of potential liability, or deprived of the opportunity to respond to

7    threatened litigation."[86]  Lumileds' attempt to protect its patent rights is absolutely protected by

8    the litigation privilege and its underlying policies, and cannot serve as the basis for Epistar's

9    harassing derivate tort action.

10

11   **V.    EVEN IF THE LITIGATION PRIVILEGE DID NOT APPLY, EPISTAR'S
         UNFAIR COMPETITION CLAIMS STILL FAIL AS A MATTER OF LAW.**

12
         In addition to being barred by the litigation privilege as discussed above, Epistar's Unfair

13   Competition Claims also fail because the letters are truthful and were sent in good faith.

14

15
         **A.    Epistar's Unfair Competition Claim under the Lanham Act fails as a matter
16              of law because Lumileds' letters truthful.**

17        Epistar alleges that Lumileds' letters contain "false descriptions of the nature,

18   characteristics and/or qualities of Epistar's products" in violation of section 43(a) of the Lanham

19   Act (15 U.S.C. § 1125(a)).[87]  To succeed with a Section 43(a) false advertising claim, Epistar

20   must establish that (1) Lumileds issued a false statement of fact in a commercial advertisement

21   about its own or another's product, (2) the statement actually deceived or has a tendency to

22   deceive a substantial segment of its audience, (3) the deception is material in that it is likely to

23   influence the purchasing decision, (4) Lumileds caused its false statements to enter interstate

24   ─────────────────────
     [85] *Concrete Unlimited Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed. Cir. 1985) ("Concrete
25   Unlimited did only what any patent owner has the right to do to enforce its patent, and that
     includes threatening alleged infringers with suit.") (citing 35 U.S.C. § 281).
     [86] *Mallinckrodt, Inc. v. Medipart, Inc. et al.*, 976 F.2d 700, 710 (Fed. Cir. 1992); *see Mikohn*
26   *Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) ("A patentee has the
     right to inform a potential infringer of the existence of a patent, whereby the recipient of the
27   information may adjust its activities, perhaps seek a license, or otherwise act to protect itself.")
     (citing *Va. Panel*, 133 F.3d at 869).
28   [87] Compl. ¶ 18.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

commerce, and (5) Epistar has been or is likely to be injured as a result of the false statement.[88]

Additionally, in order to avoid federal preemption (discussed in greater detail below), Epistar

must prove that Lumileds acted in bad faith.[89]  Here, Epistar alleges that the letters falsely

describe all of Epistar's products as infringing all of the patents at issue in the ITC when only six

products were found to infringe one of the patents.[90]  Epistar's claim fails as a matter of law

because Epistar cannot establish the necessary elements of its claim.

 First, the letters do *not* describe all of Epistar's products as infringing all of the patents at

issue in the ITC; the letters truthfully and accurately list the *exact* products and *single* patent

identified in the Exclusion Order.[91]  Contrary to Epistar's characterization of these statements as

"false descriptions of the nature, characteristics and/or qualities of Epistar's products,"[92]

Lumileds' statements are *truthful* descriptions of the Exclusion Order.  Such truthful descriptions

are *not* actionable.  Epistar's bare assertion that Lumileds' letters are false does not make it so.[93]

 Second, the letters did not mislead or have a tendency to mislead the recipients to believe

that all of Epistar's products were found to infringe all of the patents.  In addition to explicitly

identifying the exact products and single patent identified in the Exclusion Order, Lumileds also

included the ITC's Notice of Decision and Exclusion Order as an attachment.[94]  Lumileds did not

mislead the recipients about Epistar's products.  Because Lumileds' statements are neither false

nor misleading, Epistar necessarily cannot satisfy the remaining elements and its claim for unfair

competition under section 43(a) fails as a matter of law.

---

[88] *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 244 (9th Cir. 1990).
[89] *Zenith Elecs. Corp. et al. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999).
[90] Compl. ¶ 16.
[91] *See* Scher Decl. ¶ 6, Ex. E 2, 4.
[92] Compl. ¶ 18.
[93] *See Kashian*, 98 Cal. App. 4th at 932 ("Kashian's bare assertion that many of the statements in Harriman's letter are false does not make it so, much less establish that Harriman made the statements maliciously.").
[94] *See* Scher Decl. ¶ 6, Ex. E 3 (June Letter).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6

17

REDACTED PHILIPS LUMILEDS' MOTION FOR JUDGMENT ON THE PLEADINGS
C 07-5194 CW

1

2

**B.    Epistar's Unfair Competition Claim under California Business and Professions Code section 17200 fails as a matter of law because Lumileds' letters are fair, lawful, and truthful.**

3      Epistar alleges that Lumileds violated California Business and Professions Code section

4   17200 ("section 17200") by engaging in business practices that are (1) unfair, (2) unlawful,

5   and/or (3) fraudulent.[95]  Lumileds' letters are an obvious step in the Exclusion Order enforcement

6   process.  It is undisputed that the Exclusion Order will affect all of the letter recipients.  In fact,

7   many of the recipients would not have known about the Exclusion Order *but for* Lumileds'

8   letters.  Lumileds' truthful and accurate letters are not unfair, unlawful, or fraudulent; Epistar's

9   section 17200 allegation fails as a matter of law.

10      In *Cel-Tech Communications v. Los Angeles Cellular Telephone*, the Supreme Court of

11   California defined "unfair" conduct as "conduct that threatens an incipient violation of an

12   antitrust law, or violates the policy or spirit of one of those laws because its effects are

13   comparable to or the same as a violation of the law, or otherwise significantly threatens or harms

14   competition."[96]  Lumileds' letters cannot possibly fit this definition.  Affirming summary

15   judgment on federal and state unfair competition claims and state tort claims based on letters to

16   an alleged patent infringer's distributors, the Federal Circuit made clear that "patentees *do not*

17   *violate the rules of fair competition* by making accurate representations, and are allowed to make

18   representations that turn out to be inaccurate provided they make them in good faith."[97]

19   Lumileds' accurate, good faith representations regarding its patent rights are *not* unfair under

20   section 17200.

21      An "unlawful" business practice under section 17200 is "an act or practice, committed

22   pursuant to business activity, that is at the same time forbidden by law."[98]  Lumileds' letters are

23   not unlawful – in fact, they are expressly *authorized* by federal patent law.  In the seminal case

24   affirming a patentholder's right to make statements alleging infringement to a competitor's

25   ───────────────────

26   [95] Compl. ¶ 39.
   [96] *Cel-Tech*, 20 Cal. 4th at 187.

27   [97] *Golan v. Pingel Enter., Inc. et al.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002) (emphasis added) (citing *Mallinckrodt*, 976 F.2d at 710); *see also Mikohn Gaming*, 165 F.3d at 897.

28   [98] *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 969 (Ct. App. 1997) (citing *Farmers Ins. Exch. et al. v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992)).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6                          18                          REDACTED PHILIPS LUMILEDS' MOTION FOR
JUDGMENT ON THE PLEADINGS
C 07-5194 CW

1    customers, the Federal Circuit explained that "[t]his privileged right of a patentee to notify the

2    public of its patent rights is statutorily rooted in the patent laws at 35 U.S.C. § 287, which

3    authorizes patentholders to 'give notice to the public' of a patent by marking its patented articles

4    and makes marking or specific notice to the accused infringer a prerequisite to the recovery of

5    damages."[99]  Lumileds' lawful notifications of its patent rights to companies that are directly

6    affected by the Exclusion Order are not unlawful under section 17200.

7        Finally, the test for "fraud" under section 17200 is "whether the public is likely to be

8    deceived."[100]  Lumileds' straightforward and truthful statements are not likely to deceive the

9    public, as explained in detail above.  Accordingly, Epistar's allegation that Lumileds engaged in

10    unfair, unlawful, and/or fraudulent business practices under section 17200 fails as a matter of law.

11

12        **C.    Epistar's tortious interference claim fails as a matter of law because Lumileds did not engage in any independently wrongful conduct.**

13

14        Epistar alleges that Lumileds interfered with its prospective economic advantage by

15    sending letters "with the design to unfairly compete with Epistar and interfere with Epistar's

16    existing and prospective business relationships with these existing and potential customers."[101]

17    Intentional interference with prospective economic advantage requires that the defendant

18    "engaged in conduct that was wrongful by some legal measure other than the fact of interference

19    itself."[102]  Sending truthful letters to substantially interested parties is not independently wrongful

20    conduct.  Likewise, Lumileds' letters do no not constitute unfair competition under Lanham

21    § 43(a) or Cal. Bus. & P. Code § 17200, as explained above.  Therefore, Epistar's claim for

22    intentional interference with its prospective economic advantage fails as a matter of law for,

23    [99] Zenith, 182 F.3d at 1353 (emphasis added) (citing Hunter Douglas, Inc. et al. v. Harmonic Design, Inc. et al., 153 F.3d 1318, 1336 (Fed. Cir. 1998)).

24    [100] Klein, 59 Cal. App. 4th at 970.

25    [101] Compl. ¶ 33.  The elements for a claim of intentional interference with prospective economic advantage are as follows: (1) an economic relationship between the plaintiff and third party containing the probability of future economic benefit to the plaintiff, (2) knowledge by the defendant of the existence of the relationship, (3) intentional acts on the part of the defendant

26    designed to disrupt the relationship, (4) actual disruption of the relationship, and (5) damages to the plaintiff proximately caused by the acts of the defendant.  Della Penna v. Toyota Motor Sales,

27    U.S.A., Inc., 11 Cal. 4th 376, 389 (1995).  Additionally, bad faith is required for state-law tortious interference claims based on communications concerning patent rights.  Zenith., 182 F.3d at 1355.

28    [102] Della Penna, 11 Cal. 4th at 393.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6        19        REDACTED PHILIPS LUMILEDS' MOTION FOR
JUDGMENT ON THE PLEADINGS
C 07-5194 CW

1    among other reasons, lack of independently wrongful conduct.

2

3    **D.    Epistar's Unfair Competition Claims are preempted by federal patent law because Lumileds' letters are accurate and communicated in good faith.**

4

5    Not only must Epistar's Unfair Competition Claims be dismissed under Fed. R. Civ. P.

6    12(c) for their inability to satisfy the *traditional* elements of Lanham § 43(a), Cal. Bus. & Prof.

7    Code § 17200, and intentional interference with prospective economic advantage, they must also

8    be dismissed on federal preemption grounds for failure to satisfy the additional bad faith

9    requirement.  To avoid preemption, the statements in Lumileds' letters must be *objectively

10   baseless* and communicated in *bad faith.*[103]  Because Lumileds' letters are *truthful* and

11   communicated in *good faith*, Epistar's Unfair Competition Claims are preempted by federal

12   patent law.

13       The preemption doctrine is premised on the notion that a patentee with a good faith belief

14   that its patents are being infringed must be allowed to make its rights known to a potential

15   infringer; this notification does not violate any protected right.[104]  "The law recognizes a

16   presumption that the assertion of a duly granted patent is made in good faith [citation omitted];

17   this presumption is overcome only by affirmative evidence of bad faith."[105]  The Federal Circuit

18   has established a *prerequisite* finding of bad faith before liability may be imposed on a patentee

19   for marketplace statements in support of its patents – for both Lanham Act and state tort

20   claims.[106]  Accordingly, to avoid preemption, "bad faith must be alleged and ultimately proven,

21   even if bad faith is not otherwise an element of the tort claim." [107]  Bad faith is measured by the

22   "objectively baseless standard," as established by the United States Supreme Court.[108]

---

[103] *See Zenith*, 182 F.3d at 1355.

[104] *See Zenith*, 182 F.3d at 1353 (citing *Hunter Douglas*, 153 F.3d at 1336); *Mikohn Gaming*, 165 F.3d at 897 ("It has long been recognized that 'Patents would be of little value if infringers of them could not be notified of the consequences of infringement or proceeded against in the courts.  Such action considered by itself cannot be said to be illegal.'") (quoting *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37-38 (1913)); *Va. Panel*, 133 F.3d at 869.

[105] *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998) (citing *Virtue*, 227 U.S. at 37-38).

[106] *See Zenith*, 182 F.3d at 1353.

[107] *Id.* at 1355 (citing *Hunter Douglas*, 153 F.3d at 1336-1337); *see also Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374-1375 (Fed. Cir. 2004).

[108] *Prof'l Real Estate Investors, Inc., et al. v. Columbia Pictures Indus., Inc., et al.*, 508 U.S. 49,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1       To survive preemption, Epistar must make two showings.  First, Epistar must make "a

2  threshold showing of incorrectness or falsity."[109]  As scrutinized above, Lumileds' letters are

3  accurate and truthful – *accurate representations are not actionable*.[110]  Epistar cannot pass the

4  threshold requirement of falsity necessary to establish the bad faith requirement; its Unfair

5  Competition Claims are preempted by federal patent law.

6       Even assuming, *arguendo*, that Epistar could satisfy the threshold requirement, Epistar

7  cannot make the second required showing: that Lumileds' statements were *objectively baseless*.[111]

8  The Federal Circuit has made clear that "[s]ubjective considerations of bad faith are irrelevant if

9  the assertions are not objectively baseless."[112]  It is not enough to prove that Lumileds' statements

10  were false[113] or were made with a competitive commercial purpose.[114]  Epistar must offer clear

11  and convincing evidence that Lumileds *had no reasonable basis* to believe that its statements

12  were truthful in order to overcome the presumption of good faith.[115]  As Lumileds letters were

13  directly based on the Exclusion Order, it would be *impossible* for Epistar to show that Lumileds'

14  assertions were objectively baseless: Epistar's Unfair Competition claims are preempted by

15  federal patent law.

16

17  **VI.    <u>CONCLUSION</u>**

18       For all of the foregoing reasons, Defendant and Counterclaimant Lumileds respectfully

19  requests a judgment on the pleadings and an order dismissing with prejudice Epistar's claims for

20  60 (1993).

[109] *Mikohn Gaming*, 165 F.3d at 897.

[110] *See Golan*, 310 F.3d at 1371 (citing *Mallinckrodt*, 976 F.2d at 710); *Mikohn Gaming*, 165 F.3d at 897.

[111] *See Globetrotter*, 362 F.3d at 1377 (holding that "the objectively baseless standard of *Professional Real Estate* applies to state-law claims based on communications alleging patent infringement . . . ."); *GP Indus., et al. v. Eran Indus., et al.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007) (explaining that the "bad faith standard cannot be satisfied in the absence of a showing that the claims asserted were objectively baseless.") (citing *Globetrotter*, 362 F.3d at 1375).

[112] *GP Indus.*, 500 F.3d at 1375 (*citing Prof'l Real Estate*, 508 U.S. at 60).

[113] *Golan*, 310 F.3d at 1371 (citing *Mallinckrodt*, 976 F.2d at 710); *see also Mikohn*, 165 F.3d at 897 ("Indeed, a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights 'even though he may misconceive what those rights are.'") (quoting *Kaplan v. Helenhart Novelty Co.*, 182 F.3d 311, 314 (2d Cir. 1950)).

[114] *See Mikohn*, 165 F.3d at 897 (explaining that "a competitive commercial purpose is not of itself improper . . . .").

[115] *See Golan*, 310 F.3d at 1371.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1    unfair competition under the Lanham Act, intentional interference with prospective economic

2    advantage, and unfair competition under California Business & Professions Code § 17200.

3

4

5    Dated: June 5, 2008                          MORGAN, LEWIS & BOCKIUS LLP

6

7                                                 By /s/ Michael J. Lyons
                                                    Michael J. Lyons
8                                                   Attorneys for Defendant and
                                                    Counterclaimant
9                                                   Phillips Lumileds Lighting Company, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1-PA/3705519.6                          22                 REDACTED PHILIPS LUMILEDS' MOTION FOR
                                                          JUDGMENT ON THE PLEADINGS
                                                          C 07-5194 CW