# EXHIBIT B

Westlaw.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1993 WL 560905 (D.Kan.), 2 A.D. Cases 1796, 4 A.D.D. 802, 4 NDLR P 371  
(Cite as: Not Reported in F.Supp., 1993 WL 560905 (D.Kan.))

Page 1

HLowe v. Angelo's Italian Foods, Inc.  
D.Kan.,1993.

United States District Court,D. Kansas.  
Jamie LOWE, Plaintiff,  
v.  
ANGELO'S ITALIAN FOODS, INC., and its Representatives, and Angelo Fasciano, and Jack P. Fasciano, Defendants.  
Civ. A. No. 93-1233-FGT.

Oct. 8, 1993.

MEMORANDUM AND ORDER

THEIS, District Judge.

*1 This is a civil action brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and other federal civil rights statutes, as well as the Kansas Act Against Discrimination ("KAAD"), K.S.A. §§ 44-1001, et seq. Plaintiff contends that she was terminated from her employment with defendant Angelo's Italian Foods, Inc., ("Angelo's") because she disclosed to them her physical disability and made a request for reasonable accommodations.

Plaintiff has filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff argues that in their answer, defendants admit conduct which violates the ADA and the KAAD. Defendants counter that viewed in the light most favorable to them, the admitted facts do not constitute a violation of the ADA or the KAAD.

Rule 12(c) provides that any party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial...." Motions for judgment on the pleadings are disfavored. A Rule 12(c) motion is to be granted only if there are no material issues of fact to be decided and the moving party is entitled to judgment as a matter of law. See Boyd v. Doskocil Sausage Co., 686 F.Supp. 875, 876 (D. Kan.1988). In deciding a motion for judgment on the pleadings, the court must consider all the nonmoving party's factual allegations as true and must draw all reasonable inferences in favor of the nonmoving party. Id.

The court will summarize the relevant facts as set forth in defendants' answer. On or about August 23, 1991, plaintiff was hired by Angelo's in an inventory control and purchasing position. According to defendants, this position required lifting, storing, and shelving all incoming goods, in addition to bookkeeping duties. The position also required carrying items from the storeroom, which was located in the basement and accessible only by a flight of stairs, to the kitchen. The items plaintiff was expected to carry weighed up to forty-five pounds. Plaintiff was also to be assigned kitchen duties, which required standing for extended periods of time, as well as lifting and stooping. Plaintiff was apparently made aware of the job responsibilities before she was hired and did not disclose that she would be unable to fulfill those duties. Defendants further contend that all positions available at Angelo's would have required the same physical exertion.

According to defendants, after plaintiff was hired, she failed to perform some of the responsibilities of her jobs. Other employees would undertake those duties for plaintiff. Defendants allege that plaintiff often appeared to be tired at work. When asked about it, plaintiff responded that she was working evenings with her husband in his roofing business. Defendants contend that this. rather than a physiological disorder, was the cause of any problems plaintiff had.

On or about October 22, 1992, plaintiff presented a letter from Dr. Sharon McKinney, D.O., which described plaintiff as having "neurological problems" that caused pain and weakness in plaintiff's legs and fatigue. The letter stated that plaintiff would need to sit down occasionally, could not do much stooping or bending, could not lift more than fifteen pounds, should avoid stairs, and could not carry items up or down stairs. On the day plaintiff presented the letter to defendant Angelo Fasciano, who operated Angelo's, she was terminated.

*2 In their answer, defendants contend that to the letter from Dr. McKinney and plaintiff's own job performance demonstrated to defendants that plaintiff was not qualified to perform her job. Furthermore,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 4:07-cv-05194-CW    Document 71-3    Filed 07/10/2008    Page 3 of 4

Not Reported in F.Supp.                                                                                          Page 2
Not Reported in F.Supp., 1993 WL 560905 (D.Kan.), 2 A.D. Cases 1796, 4 A.D.D. 802, 4 NDLR P 371
(Cite as: Not Reported in F.Supp., 1993 WL 560905 (D.Kan.))

defendants contend that plaintiff's lack of candor concerning her ability to perform the job is justification for terminating her.

The Americans with Disabilities Act prohibits discrimination against persons with disabilities in employment and other areas. The Act defines disability as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Regarding employment of persons with disabilities, 42 U.S.C. § 12112(a) provides:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

Discrimination includes the failure to make "reasonable accommodations [FN1] to the known ... limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose undue hardship [FN2] on the operation of the business of such covered entity," 42 U.S.C. § 12112(b)(5)(A), and denying employment opportunities on the ground that such opportunities would entail the making of reasonable accommodations. 42 U.S.C. § 12112(b)(5)(B).

The Kansas Act Against Discrimination parallels the ADA in its definitions of "disability," K.S.A. § 44-1002(j) (Supp.1992), and "reasonable accommodations," K.S.A. § 44-1002(k) (Supp.1992), and in its prohibition against discrimination against persons with disabilities. K.S.A. § 1009(a)(1), (8)(E), (8)(F) (Supp.1992).

The ADA also prohibits employers from making pre-employment inquiries as to whether an applicant has a disability. 42 U.S.C. § 12112(d)(1)(A). However, an employer may inquire into the applicant's ability to perform job-related functions. 42 U.S.C. § 12112(d)(1)(B).

Plaintiff argues that the defendants' answer admits to conduct which violates the ADA and the KAAD: (1) expecting plaintiff to disclose her disabilities before employment and terminating plaintiff for the failure to so disclose; (2) failing to make reasonable accommodations that would have allowed plaintiff to continue her employment; and (3) terminating plaintiff upon learning of her disability. However, the defendants' answer, viewed in its most favorable light, does not admit to the above conduct.

As to plaintiff's first contention, the Americans with Disabilities Act prohibits employers from inquiring into the disabled status of potential employees. Plaintiff correctly notes that terminating an employee for failure to disclose a physical disability has the same effect as inquiring into the disability before hire. However, the defendants here do not contend that plaintiff had an obligation to disclose a "disability." Defendants do contend that plaintiff was aware of the physical requirements of the job and represented to them that she could perform the job when, in fact, she was unable to do so. The ADA and the KAAD do not prohibit employers from making inquiries into an applicant's ability to perform the job.

*3 Second, the defendants do not concede that they failed to make reasonable accommodations. Defendants, in their answer, contend that plaintiff was accommodated in that other employees took on a portion of plaintiff's duties. Furthermore, defendants contend that any accommodations which would have allowed plaintiff to work in accordance with her doctor's instructions would not have been "reasonable accommodations" and would have posed an "undue hardship" to Angelo's. Defendants also contend that the letter was not a request for reasonable accommodations at all.

Third, defendants contend that they did not terminate plaintiff because of a disability. In fact, defendants dispute that plaintiff had a disability at all. Defendants contend that they terminated plaintiff because she refused to perform her job. Defendants

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1993 WL 560905 (D.Kan.), 2 A.D. Cases 1796, 4 A.D.D. 802, 4 NDLR P 371
**(Cite as: Not Reported in F.Supp., 1993 WL 560905 (D.Kan.))**

argue that plaintiff was not "otherwise qualified" for the job for which she was hired because she could not or would not do the requisite work.

Plaintiff has failed to meet her burden under Rule 12(c). When the pleadings are considered in the light most favorable to the defendants, it is clear that there are several material issues of fact in dispute. Although defendants have admitted some facts which may be detrimental to their case, they have not conceded violations of the ADA and KAAD. Moreover, defendants' affirmative contentions, which are accepted as true for purposes of deciding this motion, bring additional factual issues to be decided. The plaintiff's motion for judgment on the pleadings is, therefore, denied.

The court declines each party's invitation to impose sanctions against the other(s).

IT IS BY THIS COURT THEREFORE ORDERED that plaintiff's motion for judgment on the pleadings (Doc. 16) is hereby denied.

> FN1. "Reasonable accommodations" include:
>
> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.
>
> 42 U.S.C. § 12111(9).
>
> FN2. An "undue hardship" means "an action requiring significant difficulty or expense," when considered in light of the nature and cost of the accommodation, the type of business involved, and the size and financial resources of the covered entity and the particular facility.

D.Kan.,1993.
Lowe v. Angelo's Italian Foods, Inc.
Not Reported in F.Supp., 1993 WL 560905 (D.Kan.), 2 A.D. Cases 1796, 4 A.D.D. 802, 4 NDLR P 371

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.