MORGAN, LEWIS & BOCKIUS LLP
Michael J. Lyons (State Bar No. 202284)
Andrew J. Wu (State Bar No. 214442)
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA 94306-2122
Tel: 650.843.4000
Fax: 650.843.4001
mlyons@morganlewis.com
awu@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Daniel Johnson, Jr. (State Bar No. 57409)
Amy M. Spicer (State Bar No. 188399)
One Market, Spear Street Tower
San Francisco, CA 94105-1126
djjohnson@morganlewis.com
aspicer@morganlewis.com

Attorneys for Defendant and Counterclaimant
PHILIPS LUMILEDS LIGHTING COMPANY LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

EPISTAR CORPORATION,

Plaintiff,

vs.

PHILIPS LUMILEDS LIGHTING COMPANY LLC,

Defendant.

AND RELATED COUNTERCLAIMS

Case No. 07-5194 CW

**[REDACTED] PHILIPS LUMILEDS LIGHTING COMPANY, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON EPISTAR CORPORATION'S CLAIM FOR BREACH OF CONTRACT**

Date: August 7, 2008
Time: 2:00 p.m.
Dept.: Courtroom 2, 4th Floor
Judge: The Honorable Claudia Wilken

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/20759376.6

[REDACTED] REPLY ISO LUMILEDS' MOTION FOR SUMMARY JUDGMENT (07-5194 CW)

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. LUMILEDS NEVER ABANDONED ITS ISSUE-PRECLUSION DEFENSE AND EPISTAR IS PRECLUDED FROM ASSERTING A BREACH OF THE COVENANT ........ 2

A. Res Judicata Principles Apply To An ITC Determination On A Contract Issue, Such As The Covenant Not To Sue ........ 2

B. Lumileds Did Not Waive Any Defenses To Epistar's Assertion Of Its Claim For Breach Of The Covenant In This Court ........ 3

III. THERE IS NO DISPUTE THAT EPISTAR'S [REDACTED] DESCRIBED BY EPISTAR IN DISCOVERY ........ 4

A. There is no factual dispute that the [REDACTED] identified by Epistar in the first litigation ........ 4

B. Epistar is bound by its admissions concerning the 2004 OMA product from the earlier litigation ........ 5

C. Epistar should be estopped from challenging the truthfulness of its discovery describing the structure of its "June 2004 OMA products" ........ 8

D. Even if Epistar were not estopped, the doctrines of contract interpretation would require the [REDACTED] that Epistar had described in discovery ........ 10

IV. EVEN IF EPISTAR'S LATEST DESCRIPTIONS OF ITS OMA PRODUCTS ARE ACCEPTED, LUMILEDS IS STILL ENTITLED TO SUMMARY JUDGMENT BASED ON THE [REDACTED] ........ 11

A. Epistar misinterprets the covenant [REDACTED] ........ 12

B. Properly interpreted, the covenant [REDACTED] ........ 14

V. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

Page

**Cases**

*Atamirzayeva v. U.S.*
   77 Fed. Cl. 378, 383 n. 11 (Fed. Cl. 2007) .................................................................. 12

*Bio-Technology Gen. Corp. v. Genentech, Inc.*
   80 F.3d 1553, 1564 (Fed. Cir. 1996) ............................................................................. 2

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*
   320 F.3d 1339, 1352 (Fed. Cir. 2003) ......................................................................... 12

*Commonwealth Ins. Co. v. Titan Tire Corp.*
   398 F.3d 879, 887 n.5 (7th Cir. 2004) ......................................................................... 10

*Darnell v. Target Stores*
   16 F.3d 174, 177 (7th Cir. 1994) ................................................................................. 15

*Deutsch v. Flannery*
   823 F.2d 1361 (9th Cir. 1987) ....................................................................................... 3

*Dickerson v. Colgrove*
   100 U.S. 578, 580-81 (1880) ......................................................................................... 9

*Dr. Seuss Ent., L.P. v. Penguin Books USA, Inc.*
   109 F.3d 1394, 1398, n. 3 (9th Cir. 1997) .................................................................. 12

*Duff v. Lobdell-Emery Mfg. Co.*
   926 F. Supp. 799, 802-03 (N.D. Ind. 1996) .................................................................. 4

*In re Application of Albrecht*
   514 F.2d 1389, 1395 (C.C.P.A. 1975) ........................................................................ 12

*Jack v. Trans World Airlines, Inc.*
   854 F. Supp. 654, 660-61 (N.D. Cal. 1994) .................................................................. 7

*Kale v. Obuchowski*
   985 F.2d 360, 361-62 (7th Cir. 1993) (same) ............................................................ 10

*Kesmarki v. Kisling*
   400 F.2d 97, 102 (6th Cir. 1968) .................................................................................. 7

*King v. E.F. Hutton & Co., Inc.*
   117 F.R.D. 2, 6 (D.D.C. 1987) ...................................................................................... 4

*Lehman v. United States*
   154 F.3d 1010, 1016-17 (9th Cir. 1998) ....................................................................... 9

*Merced County Sheriff's Employees' Ass'n. v. County of Merced*
   188 C.A.3d 662, 673 (Cal. App. 1987) ....................................................................... 11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

ii

[REDACTED] REPLY ISO LUMILEDS' MOTION FOR
SUMMARY JUDGMENT (07-5194 CW)

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*New Hampshire v. Maine*
532 U.S. 742, 749-51 (2001)........................................................................................... 10

*NLRB v. MacMillan Ring-Free Oil Co.*
394 F.2d 26, 33, fn 6 (9th Cir. 1968) ................................................................................ 12

*Remus v. Sheahan*
2006 WL 418654, at *11 (N.D. Ill. Feb. 16, 2006)............................................................ 9

*Rissetto v. Plumbers and Steamfitters Local 343*
94 F.3d 597, 600-01 (9th Cir. 1996) ............................................................................. 9, 10

*Scamihorn v. Gen. Truck Drivers Local 952*
282 F.3d 1078, 1085 n.7 (9th Cir. 2002)............................................................................ 7

*Tandon Corp. v. Int'l Trade Comm'n*
831 F.2d 1017, 1019 (Fed. Cir. 1987)................................................................................ 2

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*
687 F. Supp. 832, 846 (S.D.N.Y. 1988)............................................................................. 2

*Texas Instruments, Inc. v. Cypress Semiconductor Corp.*
90 F.3d 1558, 1568-70 (Fed. Cir. 1996) ............................................................................ 2

*U.S. v. Verdugo-Urquidez*
494 U.S. 259 (1990)......................................................................................................... 12

*Ward v. Rock against Racism*
491 U.S. 781, 799-800 (1989).......................................................................................... 12

*Watkins v. U.S. Army*
875 F.2d 699, 709 (9th Cir. 1989 (*en banc*)...................................................................... 9

*Wyler Summit P'ship v. Turner Brood Sys.*
235 F.3d 1184, 1190 (9th Cir. 2000)................................................................................ 10

**Other**

28 U.S.C. § 1338(a) ............................................................................................................ 2

Cal. Civ. Code § 1577 ...................................................................................................... 11

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

# I. INTRODUCTION

Because Lumileds prevailed on its infringement claim in the ITC, Epistar is now precluded from asserting the breach of the covenant not to sue that it abandoned during that case. The parties' agreement to litigate the breach of contract issue included not only the claim itself, but Lumileds' defenses to that claim. Since Lumileds never waived issue-preclusion based on its subsequently prevailing in the ITC on the infringement issue, Epistar cannot now avoid preclusion by arguing that such a waiver was implied. Epistar's claim that an ITC determination on the covenant not to sue would not have been entitled to preclusion is also fundamentally flawed because the covenant involves a breach of contract and, thus, is not a patent-based determination.

Even if this Court decides to consider the breach of covenant claim on its merits, there is no dispute that Epistar's [REDACTED] that Epistar described during the first litigation before this Court. Epistar's contrary representations regarding what it now calls its [REDACTED] should be disregarded, as Epistar never disclosed these versions during the first litigation. Unlike its current contentions, Epistar withheld all information on these versions while telling this Court and Lumileds prior to settlement that it had fully described its OMA products in discovery. In view of Epistar's knowledge that Lumileds was relying on Epistar's descriptions of its OMA products as the basis for [REDACTED], Epistar should be estopped from changing or disavowing its representations in this earlier litigation. In the alternative, the Court should interpret the [REDACTED] to be those described by Epistar in discovery because, even if Lumileds had made a "mistake" in relying on Epistar's discovery, Epistar was well aware of Lumileds' reliance.

The covenant itself and the history of its negotiation also undermine Epistar's attempt to

, Lumileds' motion for summary judgment on the covenant claim should be granted.

## II. LUMILEDS NEVER ABANDONED ITS ISSUE-PRECLUSION DEFENSE AND EPISTAR IS PRECLUDED FROM ASSERTING A BREACH OF THE COVENANT

### A. *Res Judicata* Principles Apply To An ITC Determination On A Contract Issue, Such As The Covenant Not To Sue

Although determinations of the ITC regarding patent issues are not given preclusive effect because federal district courts have exclusive jurisdiction over patent issues, the same rule does not apply to contract issues such as Epistar's covenant-not-to-sue defense. Contract claims, unlike patent claims, do not "aris[e] under any Act of Congress relating to patents"; do not fall under the "original" or "exclusive" jurisdiction of the federal district courts; and thus are not "patent-based determinations." *See* 28 U.S.C. § 1338(a). Epistar's own papers demonstrate that the covenant defense was a contract issue, not an issue arising under the patent statute. Epistar's Opp. at 3; Complaint at 6; Epistar's Exh. A at 2 (e-mail from Y. Hu to D. Johnson of 08/06/2006, referring to the covenant issue as a "breach of contract.").

*Telectronics* properly recognized this distinction when it held that even though district courts have exclusive jurisdiction over patent infringement or invalidity, "[t]his does not mean … that the federal courts have exclusive jurisdiction over all questions which in some way concern a patent." *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 846 (S.D.N.Y. 1988). A license or covenant not to sue is not a patent-based defense, but "a defense based on a contractual right to use the patent." *Id.* at 846 n.40. Thus, "[t]ribunals other than the federal courts have the authority to decide matters involving contracts relating to patents." *Id.* at 846.

In so holding, the *Telectronics* court properly found that reliance on *Tandon*, cited by Epistar, was "misplaced" because *Tandon* did not involve a license defense. *Id.* at 846 n.44, *discussing Tandon Corp. v. Int'l Trade Comm'n*, 831 F.2d 1017, 1019 (Fed. Cir. 1987). The other cases cited by Epistar are likewise inapposite because they all involved infringement, invalidity, or other patent-based issues that fall within the exclusive and original jurisdiction of the courts. *See, e.g., Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568-70 (Fed. Cir. 1996); *Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1564 (Fed. Cir. 1996). Because there is no conflict among these cases, *Telectronics* remains good law.

**B. Lumileds Did Not Waive Any Defenses To Epistar's Assertion Of Its Claim For Breach Of The Covenant In This Court**

Although Lumileds agreed not to pursue a ruling on the merits in the ITC, Lumileds never agreed to abandon any of its objections or defenses to Epistar's assertion of a breach of the covenant in a district court. Rather, both parties took a calculated risk in attempting to simplify the issues before the ITC. Lumileds bore the risk that it might not prevail before the ITC and, without a decision on the merits of the covenant-not-to-sue defense, would have been unable to prevent Epistar from raising this defense here. Epistar took the risk that if Lumileds prevailed in the ITC, then the covenant-not-to-sue defense would be precluded. Epistar must now live with the consequences of the deal it struck. Instead, Epistar now seeks to change the agreement to include a non-existent waiver of this preclusion.

With no evidence of any such waiver, Epistar resorts to attacking Lumileds' counsel by describing Mr. Johnson's remarks before the ALJ as "disingenuous." When Mr. Johnson told the ALJ, "We [Lumileds] couldn't stop them [from withdrawing that defense] in the first place, and we'll deal with it at such time as they raise it again" (Scher Decl., [D.I. 62] ("Scher") Exh. 4 (Hr'g Tr.) at 815:5-21), he was effectively reiterating what he had earlier told Epistar's counsel:

> You raised [the covenant issue] [REDACTED]. If you drop the defense we will not pursue the issue in the ITC. If you rely on the Covenant we have to respond. Let me know what you decide.

Scher Exh. 5 (e-mail from D. Johnson to Y. Hu of e-mail of 08/06/06, at 10:31 p.m.). Lumileds honored its bargain by not pursuing its advantage in the ITC and now Epistar must honor its agreement permitting Lumileds to defend on any and all grounds.

As discussed in the opening brief, the Ninth Circuit, in the *Deutsch* case, declined to imply a waiver of an issue-preclusion defense where it was not expressly waived in the agreement of counsel. Contrary to Epistar's contentions, the boilerplate reservation of defenses in the *Deutsch* case does not distinguish it from the current situation. *Deutsch v. Flannery*, 823 F.2d 1361 (9th Cir. 1987). Here, it is undisputed that Lumileds' agreement to "litigate [Epistar's] claim of breach of contract in district court" included not only the claim itself, but also Lumileds' defenses to that claim. There is no justification for Epistar's demand that the Court imply an

agreement to abandon an issue-preclusion defense based on Lumileds' prevailing on the merits of its infringement case in the ITC.

## III. THERE IS NO DISPUTE THAT EPISTAR'S [REDACTED] DESCRIBED BY EPISTAR IN DISCOVERY

The descriptions and comparisons of Epistar's OMA products in Lumileds' opening brief rest entirely on the interrogatory responses, deposition testimony, diagrams, and other information that *Epistar* produced in the previous litigations. Epistar's attack on Lumileds' description of the 2004 OMA LEDs is nothing more than an indictment of Epistar's own inaccurate testimony, attorney argument, and discovery responses in the first case before this Court. Epistar never identified or described the [REDACTED] in the first case, nor did it produce [REDACTED] upon which it now relies, until almost two years after the covenant had been executed. As discussed below, Epistar should be estopped from challenging its own discovery responses that it knew Lumileds had relied upon in entering the Settlement Agreement. If Epistar is held to its discovery responses, there is no dispute that [REDACTED].

### A. There is no factual dispute that the [REDACTED] identified by Epistar in the first litigation

Setting aside Epistar's new contentions regarding the [REDACTED] Epistar does not dispute that Lumileds' description of the 2004 OMA products faithfully tracks Epistar's discovery responses in the first case and fairly compares these discovery responses with Epistar's characterization of the OMA I and II products at issue in the ITC. Epistar does not dispute that Lumileds based its description entirely on Epistar's representations and discovery in that first litigation. Lumileds is entitled to rely on those representations in its motion for summary judgment as admissions of a party-opponent. *Duff v. Lobdell-Emery Mfg. Co.*, 926 F. Supp. 799, 802-03 (N.D. Ind. 1996); *King v. E.F. Hutton & Co., Inc.*, 117 F.R.D. 2, 6 (D.D. C. 1987).

[REDACTED]



[redacted] Accordingly, if Epistar is bound by its previous representations regarding its June 2004 OMA products, then there is no dispute [redacted] and that summary judgment is appropriate.

**B. Epistar is bound by its admissions concerning the 2004 OMA product from the earlier litigation**

Unable to contest Lumileds' summary of Epistar's own interrogatory responses in the first

litigation, Epistar relies instead on evidence regarding the so-called [REDACTED] *that it never produced during the first litigation.* Epistar's interrogatory responses, for example, [REDACTED]. *See* Scher Exh. 6 at 1-22. [REDACTED]. It is telling that the evidence that Epistar now relies on regarding these early versions are declarations prepared specifically for the purpose of opposing Lumileds' Motion – over four years *after* the covenant had been signed. Epistar's reliance on the [REDACTED] is especially audacious, given that Epistar failed to produce that document during the first litigation, even though the face of the document shows [REDACTED]. *See* Lu Decl. Exh. 1. This technical specification also belies Epistar's assertion that layer-by-layer descriptions of the OMA products are not "readily doable." Epistar's Opp. at 11.

Despite its concealment, Epistar told this Court that it had provided extensive discovery on its OMA products as they existed in 2004. For example, in opposing Lumileds' March 2004 motion to compel production of more discovery on the OMA products, Epistar asserted:

> Lumileds also seeks discovery relating to Epistar's recently released "OMA" product. Epistar has already provided Lumileds with extensive discovery regarding the structure of the OMA product, including deposition testimony that included a drawing of the structure of the "OMA" product, narrative interrogatory responses that described each layer of the OMA product and an OMA product sample.

Scher Exh. 15 (Epistar's Opp. to Lumileds' motion to compel) at 4:10-14. In this earlier brief, Epistar defends the exact same discovery that Lumileds relies upon in its motion.

Despite these earlier representations to this Court that it had provided "extensive discovery," "deposition testimony," "a drawing of the structure of the OMA product," and "narrative interrogatory responses that describe each layer of the OMA product," Epistar now argues that this same discovery is wrong and cannot be considered as reliable evidence of the actual structure of its OMA products at the time. Indeed, Epistar withheld the very information on the [REDACTED] that it now asserts is critical to understanding the scope of the covenant. In view of these admitted violations of at least Federal Rules of Civil

Procedure 26(e), 33, and 34, Epistar's assertion that it is not "bound by [its] prior unverified interrogatory responses and the testimony of its Rule 30(b)(6) witness, Dr. Jou" is particularly unfair and troubling.[1] Opp. at 11.

Epistar tries to explain away its failure to provide discovery by arguing that its duty to supplement was somehow suspended during the first litigation. To the contrary, although the parties stipulated to delay certain deadlines to pursue settlement, the parties continued to litigate the case through the effective date of the settlement in June 2004, including Epistar's filing of its claim construction brief on June 18, 2004. Lyons Exh. L. In fact, exhibits provided by both Epistar and Lumileds demonstrate that Lumileds continued to demand complete disclosure of Epistar's then-current OMA products and to file motions to compel, up to the very date the covenant was executed. *See, e.g.*, Epistar's Exh. E to the Huang Decl. (Letter from A. Wu to R. Weiss, Epistar's counsel, of June 14, 2004, requesting complete information on all OMA products); Scher Exh. 14 at 3-7 (Lumileds' motion to compel information on all OMA products).

Epistar cannot now create a genuine issue of material fact by contradicting its previous interrogatory responses or deposition testimony regarding the OMA products that existed as of June 2004 without some reasonable explanation for its change of position. *See Scamihorn v. Gen. Truck Drivers Local 952*, 282 F.3d 1078, 1085 n.7 (9th Cir. 2002); *Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 660-61 (N.D. Cal. 1994). This basic principle applies even to unsigned or unverified interrogatory responses and other admissions against interest in the earlier lawsuit. *See Kesmarki v. Kisling*, 400 F.2d 97, 102 (6th Cir. 1968). Thus, this Court should disregard Epistar's contentions regarding its [REDACTED] and bind Epistar to its previous discovery responses regarding its June 2004 OMA products. If bound, there is no

[1] Epistar further calls its own discovery into question by arguing that Lumileds unfairly "chose to use [REDACTED], rather than Epistar's internal product structure design document" in its Motion. Epistar's Opp. at 10 n.4. First, Lumileds' opening brief relied primarily on the very specific interrogatory responses and mentioned [REDACTED] once and only in passing in a footnote. Lumileds' Br. at 6. n.4. Second, [REDACTED] is the very one Epistar referred to in opposition to Lumileds' motion to compel in the earlier litigation as proof that it had provided complete discovery.

dispute that [redacted].

**C. Epistar should be estopped from challenging the truthfulness of its discovery describing the structure of its "June 2004 OMA products"**

Since Lumileds had no knowledge of Epistar's alleged [redacted] during the first litigation, it reasonably relied on Epistar's interrogatory responses and other representations regarding its June 2004 OMA products when it negotiated and executed the covenant not to sue. Epistar was fully aware of Lumileds' reliance on its discovery responses. As Lumileds' explained to Epistar's counsel just prior to settlement:

[redacted]

Lyons Exh. B (June 18, 2004 Letter from Lyons to Weiss) at 2. [redacted] *Id*. In other correspondence, [redacted][2] Lyons Exh. D (June 22, 2004 Letter).

Rather than discourage Lumileds from relying on its discovery responses, Epistar [redacted]

[redacted]

Lyons Exh. E (June 24, 2004 Letter of Weiss to Lyons) at 2. At the same time, Epistar's counsel [redacted]

---

2 [redacted]

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/20759376.6

8

[REDACTED] REPLY ISO LUMILEDS' MOTION FOR SUMMARY JUDGMENT (07-5194 CW)

[REDACTED] *See* Lyons Exh. F (June 23, 2004 Letter from LaPorte to Wu).

If Epistar's present assertions about its [REDACTED] are accepted as true, then this is a textbook case for equitable estoppel. In particular: (i) Epistar knew of the alleged facts regarding its [REDACTED] during its negotiations with Lumileds but failed to disclosure them; (ii) Epistar intended that Lumileds would act upon its false description of its OMA products, and knew Lumileds had reason to believe it could rely on that information; (iii) Lumileds was ignorant of the true facts, since Epistar had not disclosed the [REDACTED] during their negotiations; and (iv) Lumileds detrimentally relied on Epistar's conduct by entering into a settlement agreement, [REDACTED] *See Lehman v. United States*, 154 F.3d 1010, 1016-17 (9th Cir. 1998); *Watkins v. U.S. Army*, 875 F.2d 699, 709 (9th Cir. 1989 (*en banc*).

Consequently, Epistar should be equitably estopped from changing its position in this litigation regarding the scope and structure of its June 2004 OMA products. *Dickerson v. Colgrove*, 100 U.S. 578, 580-81 (1880) (under equitable estoppel, "[s]uch a change of position is sternly forbidden" in order to prevent a party from "disappointing the expectations" of a party that has detrimentally relied upon the party's previous representations).

In addition, Epistar should be judicially estopped from "playing fast and loose with the courts" by making factual representations to gain an advantage over Lumileds in the first litigation, and then making inconsistent representations in the present litigation to gain another advantage. *See Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600-01 (9th Cir. 1996). Epistar has clearly taken inconsistent positions in the two litigations regarding its 2004 OMA products – those inconsistencies are the entire basis of Epistar's argument. There is also no dispute that Epistar's previous representations were the basis for, or important to, [REDACTED]. *See Remus v. Sheahan*, 2006 WL 418654, at *11 (N.D. Ill. Feb. 16, 2006).

Epistar also clearly gained an advantage from its previous representations, in that its settlement [REDACTED] *Cf. Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 887 n.5 (7th Cir. 2004). Epistar's withholding of its [REDACTED] cannot be attributed to a mere mistake or other justified omission, particularly in view of Lumileds' repeated requests and motion to compel full disclosure of the pre-covenant OMA products. In addition, Epistar's attempt to unilaterally expand the scope of the covenant four years after it was signed would undoubtedly work an unfair advantage over Lumileds, which had relied on Epistar's previous representations about its June 2004 OMA products [REDACTED]. *See New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001) (discussing judicial estoppel). Judicial estoppel should thus be applied because Epistar successfully used its representations to obtain a favorable settlement in the first litigation. *See Rissetto*, 94 F.3d at 604-05 (judicial estoppel can apply to cases that end in settlement); *Commonwealth Ins. Co.*, 398 F.3d at 887 (same), *citing Kale v. Obuchowski*, 985 F.2d 360, 361-62 (7th Cir. 1993) (same).

Judicial estoppel is also appropriate in view of Epistar's 2004 misrepresentations to this Court in the first case that it had fully disclosed all of the OMA products. *See* Scher Exh. 15 at 4, 6. Such patently false statements "amount to an affront to the court" that warrants judicial estoppel. *Wyler Summit P'ship v. Turner Brood Sys.*, 235 F.3d 1184, 1190 (9th Cir. 2000).

Accordingly, Epistar should be equitably and judicially estopped from changing its position regarding its June 2004 OMA products and relying on representations regarding the [REDACTED] that had not been made in the first litigation. If estopped from changing its position, there is no dispute that [REDACTED]

**D. Even if Epistar were not estopped, the doctrines of contract interpretation would require the [REDACTED] that Epistar had described in discovery**

In the alternative, basic principles of contract law dictate that the term [REDACTED] should be

interpreted as Lumileds understood it to mean when it executed the settlement agreement. Epistar now effectively argues that Lumileds was "mistaken" about the structure of Epistar's products. *See* Cal. Civ. Code § 1577 (mistake of fact). If so, the contract should be interpreted in accordance with Lumileds' understanding, not Epistar's. *Merced County Sheriff's Employees' Ass'n. v. County of Merced*, 188 C.A.3d 662, 673 (Cal. App. 1987) (contracts are interpreted according to the understanding of one of the parties if "that party has no reason to know of any different meaning attached by the other, and the other has reason to know the meaning attached by the first party.")

Even assuming Epistar's current representations regarding the [REDACTED] are true, this would only demonstrate that Epistar knew the structure of its own OMA products at the time the parties entered into the covenant not to sue. Lumileds, on the other hand, having no knowledge of that information, reasonably interpreted the term [REDACTED] to refer to the products as they had been described by Epistar in its interrogatory responses and other discovery. Lumileds had no reason to know of any different meaning because Epistar withheld discovery regarding its [REDACTED]. For the same reason, and as documented in the parties' correspondence described above, Epistar knew of the meaning that Lumileds was attaching to the term [REDACTED]. As a result, even if Epistar were neither bound by nor estopped from challenging the accuracy of its discovery, the covenant should be interpreted or conformed to Lumileds' understanding that the [REDACTED] were those that had been disclosed by Epistar. *See* Cal Civ. Code §§ 1577, 1689, 3399; *Merced County*, 188 C.A.3d at 673.[3]

## IV. EVEN IF EPISTAR'S LATEST DESCRIPTIONS OF ITS OMA PRODUCTS ARE ACCEPTED, LUMILEDS IS STILL ENTITLED TO SUMMARY JUDGMENT BASED ON THE [REDACTED]

Even if this Court entirely accepts Epistar's new descriptions of its products, Lumileds'

---

[3] To defeat Epistar's breach of contract claim, Lumileds merely seeks to confirm that the contract cannot be interpreted differently than as understood by Lumileds at the time. Lumileds reserves the right to seek in the future any other remedies that may be appropriate, including rescission of the contract as a result of Epistar's deceptive conduct.

motion should still be granted because [REDACTED]

### A. Epistar misinterprets the covenant [REDACTED]

Epistar's remaining opposition rests on the untenable assertion that [REDACTED] In particular, Epistar admits that [REDACTED] *See* Epistar's Opp. at 12:22-25, 15:8-9.

Unlike the hairsplitting proposed by Epistar, courts routinely equate "significant" and "substantial" differences. *See, e.g., Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1352 (Fed. Cir. 2003) (expert testimony that "any *differences* between the two are *insignificant*" supported verdict that infringing product was *insubstantially* different from claim); *In re Application of Albrecht*, 514 F.2d 1389, 1395 (C.C.P.A. 1975) (a "*substantial*, actual *differences* in properties . . . meaning a showing of no property in common, or a showing of *significant difference* in degree of a common property" was required to overcome *prima facie* obviousness). In fact, courts in a broad range of contexts use the terms "substantial" and "significant" interchangeably and ascribe the same meaning to both. *See, e.g., Ward v. Rock against Racism*, 491 U.S. 781, 799-800 (1989) (interchangeably referring to the government's prerequisite interest under a balancing of interests test as a "substantial government interest" and a "significant government interests"); *Dr. Seuss Ent., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398, n. 3 (9th Cir. 1997) (in copyright action, "[s]ubstantial similarity may be found whenever the works share significant similarity"); *NLRB v. MacMillan Ring-Free Oil Co.*, 394 F.2d 26, 33, fn 6 (9th Cir. 1968) (for evidence of unfair labor practice to be "substantial" it must be "significant" or "not inconsiderable"); *Atamirzayeva v. U.S.*, 77 Fed. Cl. 378, 383 n. 11 (Fed. Cl. 2007), *discussing U.S. v. Verdugo-Urquidez*, 494 U.S. 259 (1990) ("substantial" and "significant" used interchangeably to describe the substantial connections test for nonresident alien standing).

The record also flatly contradicts Epistar's assertion that "[g]iven the history of the

negotiations, the term cannot mean Epistar's Opp. at 12:22-23. To the contrary, the parties' negotiations confirm that they had intended to In the early stages of those negotiations, *See* Lyons Exh. G (April 23, 2004 Email from Wu to LaPorte and attachment); Lyons Exh. H (April 30, 2004 Letter from Weiss to Wu) at 2. Lumileds explained the reason for the provision as follows:

Lyons Exh. I (May 7, 2004 Letter Lyons to Weiss) at 2.

. See Lyons Exh. J (May 19, 2004 Letter from Weiss to Lyons) at attachment, ¶ 4.2. Far from "rejecting" this language, as it now claims, Lyons Exh. K (June 16, 2004 Letter from Weiss to Lyons) at 1. To persuade Lumileds that the change was not substantive, Epistar further noted that *Id.*

Lyons Exh. B (June 18, 2004 Letter from Lyons to Weiss) at 2. This substitution resulted in the final language of the covenant.

Given this history, Epistar cannot reasonably dispute that any

[redacted] In fact, [redacted] *See* Lyons Exh. E (June 24, 2004 Letter from Weiss to Lyons (attachment at ¶ 4.2)) [redacted] This proviso [redacted] directly undercuts Epistar's current position that [redacted] *See* Scher Exh. 1, ¶ 4.2. [redacted]

**B. Properly interpreted, the covenant** [redacted]

[redacted][4] Epistar's Opp.

[4] [redacted] Scher Exh. 12 (Stringfellow) at 335:1-9 (emphasis added). Dr. Stringfellow's *post hoc*
(continued)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

at 14, citing Scher Exh. 11 (Lu Tr. of 03/28/06) at 256:25-257:10.

This admission is fatal to Epistar's claim. [REDACTED] *See* Scher Exh. 1, ¶ 4.2. *Both* of these changes would affect the visual appearance of the LED. Thus, changes to the visual appearance of the products do constitute [REDACTED] *See* Epistar's Opp. at 14.

Since the [REDACTED], it is even further outside the covenant. [REDACTED] Epistar's Opp. at 17. [REDACTED] *See* Scher Exh. 11 (Lu Tr. of 03/28/06) at 204:9-205:1.

## V. CONCLUSION

Pursuant to the doctrine of claim preclusion, Epistar should be barred from assertion of breach of the covenant not to sue in this case. In the alternative, summary judgment should be entered that the covenant not to sue [REDACTED], and Epistar's claim for breach of the covenant should be dismissed.

---

rationalizations are immaterial, as a party cannot create a genuine issue of material fact by contradicting statements in his previous deposition. *Darnell v. Target Stores*, 16 F.3d 174, 177 (7th Cir. 1994).

Dated: July 24, 2008

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
DANIEL JOHNSON, JR.
MICHAEL J. LYONS
ANDREW J. WU
AMY M. SPICER

By /s/ Michael J. Lyons
Michael J. Lyons
Attorneys for Defendant and Counterclaimant
PHILIPS LUMILEDS LIGHTING COMPANY LLC