IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPISTAR CORPORATION,<br><br>    Plaintiff and Counterclaim<br>    Defendant,<br><br>  v.<br><br>PHILIPS LUMILEDS LIGHTING COMPANY,<br>LLC,<br><br>    Defendant and<br>    Counterclaimant.<br>_____/ | No. C 07-5194 CW<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS |

    Defendant Philips Lumileds Lighting Company has filed a motion for summary judgment on Plaintiff Epistar Corporation's breach of contract claim and a motion for judgment on the pleadings with respect to Epistar's claims for unfair competition and tortious interference. Epistar opposes the motions. The motions were heard on August 7, 2008. After the hearing the parties submitted supplemental briefs regarding Epistar's federal unfair competition claims. Having considered all of the parties' papers, the Court

denies Lumileds' motion for summary judgment and grants in part and denies in part its motion for judgment on the pleadings.

BACKGROUND

As discussed in the Court's earlier order, this case is part of a series of disputes between the parties relating to the alleged infringement by Epistar of a light emitting diode (LED) patent, United States Patent No. 5,008,718 ('718 patent), held by Lumileds.

In September, 1999, UEC filed suit against Defendant Lumileds, Hewlett-Packard Co. and Agilent Technologies, seeking, among other things, a declaration that UEC's products did not infringe the '718 patent. UEC and Lumileds settled that litigation in 2001 and entered into two separate agreements: a settlement agreement (2001 UEC/Lumileds settlement agreement) and a patent license agreement (UEC/Lumileds patent license agreement).

In 2002, Lumileds filed in this Court a complaint against several of Epistar's customers, alleging infringement of the '718 patent (2002 suit). On January 6, 2003, Epistar filed suit in the Central District of California against Lumileds, seeking a declaration that its products did not infringe the '718 patent and that the '718 patent was invalid (2003 suit). The 2003 suit was transferred to this Court after Lumileds amended its complaint in the 2002 suit to name Epistar as a defendant and to include allegations that Epistar's products infringed the '718 patent. The cases were consolidated and were resolved when Epistar and Lumileds entered into a settlement agreement. The agreement included a covenant by Lumileds not to sue Epistar for infringement of the '718 patent based on Epistar's Omnidirectional Mirror Adhesive

2

(OMA) LED products and a license to Epistar to make, sell, use, offer to sell and import AlGaInP absorbing-substrate LEDs (2004 Epistar/Lumileds settlement agreement).

In August, 2005, Epistar and UEC finalized a merger agreement through which Epistar would acquire all of UEC's assets and operations. The merger took effect on December 30, 2005 and UEC was dissolved.

On November 4, 2005, Lumileds filed a complaint with the ITC alleging, among other things, a violation of the Tariff Act of 1930 based on the import of certain LED products that infringe the '718 patent. In the Matter of Certain High-Brightness Light Emitting Diodes and Products Containing Same, Inv. No. 337-TA-566. Epistar was one of the respondents named in Lumileds' complaint. During the course of the investigation, Lumileds alleged that Epistar's OMA products infringed the '718 patent. The ITC made a final determination that Epistar's OMA products infringe the '718 patent and entered an exclusion order precluding Epistar from importing its OMA LED products into the United States. Epistar appealed the ITC's final determination to the Federal Circuit.

At the same time that it filed its complaint with the ITC, Lumileds filed another complaint in this Court, alleging infringement of patents including the '718 patent (2005 suit). That case was stayed at Epistar's request pending resolution of the ITC proceedings.[1]

---

[1]The 2005 suit was stayed pursuant to 28 U.S.C. § 1659, which provides,

In a civil action involving parties that are also

3

On October 10, 2007, Epistar filed the present complaint alleging that, after the entry of the ITC final determination, Lumileds sent false and misleading letters to Epistar's existing and potential customers about the scope of the ITC's findings. Those letters, Epistar argues, improperly suggest that the ITC determined that all of Epistar's products infringe all three of the patents it considered.  Therefore, Epistar claims that the letters constitute (1) unfair competition under the Lanham Act, (2) intentional interference with Epistar's prospective economic advantage, and (3) unfair competition in violation of California Business and Professions Code § 17200.  Epistar seeks to enjoin Lumileds from continuing the allegedly misleading communications. Epistar also asserts that Lumileds breached the covenant not to sue contained in the 2004 Epistar/Lumileds settlement agreement by filing the ITC complaint and the 2005 suit alleging infringement of the '718 patent.  Finally, Epistar seeks a declaration that the 2001 UEC/Lumileds settlement agreement became null and void when Epistar acquired UEC and that the Epistar/Lumileds settlement agreement controls.

Lumileds filed a motion to stay this action pending the final resolution of its claims before the ITC.  The Court granted it in

---

parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission.

4

part, denied it in part and deferred ruling in part. Specifically, the Court granted the stay with respect to the declaratory relief claim regarding the UEC/Lumileds patent license agreement, denied the stay with respect to the claims for injunctive relief and deferred ruling with respect to the breach of contract claim. The Court deferred ruling to allow Lumileds to bring the present motion arguing that Epistar's abandonment of its license defense before the ITC operates as a waiver of its current breach of contract claim in this case. However, the Court advised the parties that it would stay the claim if it found that it was not waived.

                               DISCUSSION

I.   Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d

5

1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### A.   Waiver

Res judicata, or claim preclusion, prohibits the re-litigation of any claims that were raised or could have been raised in a prior action. Western Radio Servs. Co., Inc. v. Glickman, 123 F.3d 1189, 1192 (9th Cir. 1997) (citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)). The purpose of the doctrine is to "relieve parties of the cost and vexation of multiple law suits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Marin v. HEW, Health Care Financing Agency, 769 F.2d 590, 594 (9th Cir. 1985) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). Res judicata operates where there is "1) an identity of claims, 2) a final judgment on the merits, and 3) identity or privity between parties." Western Radio, 123 F.3d at 1192 (citing Blonder-Tongue Lab. v. University of Ill. Found., 402 U.S. 313, 323-324 (1971)).

As in its motion to stay, Lumileds again argues that it is entitled to judgment on Epistar's breach of contract claim because Epistar raised the covenant not to sue as a defense in the ITC proceeding, but elected to abandon it on the fourth day of the hearing before the ITC and therefore has now waived it. Epistar counters that its decision to abandon its covenant not to sue

6

defense in the ITC has no preclusive effect because the ITC's determinations on issues of patent law are not binding on this Court. See, e.g., Texas Instruments, Inc. v. Int'l Trade Comm'n, 851 F.2d 342, 344 (Fed. Cir. 1988); Tandon Corp. v. Int'l Trade Comm'n, 831 F.2d 1017, 1019 (Fed. Cir. 1987).

Lumileds argues that this rule restricting the preclusive effect of ITC determinations does not apply here because the covenant-not-to-sue defense is a "non-patent issue." Motion at 13. Therefore, Lumileds asserts that Epistar's waiver of the covenant-not-to-sue defense in the ITC should preclude it from bringing in this court a breach of contract claim based on the covenant not to sue. Lumileds cites Telectronics Proprietary, Ltd. v. Medtronic, Inc., 687 F. Supp. 832 (S.D.N.Y. 1988), where a court in the Southern District of New York distinguished between different types of defenses to patent infringement. The Telectronics court explained, "Unlike invalidity and unenforceability, noninfringement is not a defense based on the validity of a patent. Rather it is a defense based on a contractual right to use the patent, or on defendant's lack of use of the patent." Id. at 846 n.40. Therefore, the Telectronics court found that "the ITC's determination as regards the existence of a license under a patent . . . was not one of the validity of a patent but of the existence of a contract" and should be "accorded issue-preclusive effect." Id. at 846.

However, as Epistar points out, a more recent Federal Circuit decision held that "accused infringers can raise whatever defenses they believe are justified, regardless whether they previously

7

raised them and lost in the ITC." Texas Instruments Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1569 (Fed. Cir. 1996). Therefore, the Court finds that Epistar's decision in the ITC proceedings to abandon its defense based on the covenant not to sue does not preclude it from bringing the present breach of contract claim. Moreover, even if abandoning the covenant not to sue defense were sufficient to constitute waiver of the breach of contract claim, significant factual questions remain with respect to Lumileds' involvement in Epistar's decision to abandon the defense. One interpretation of the communications is that the parties agreed that Epistar could withdraw its covenant not to sue defense from the ITC proceedings and, instead, pursue a breach of contract claim in the district court. See Huang Decl., Ex. A at 2.

Thus, Lumileds' motion for summary adjudication of this issue must be denied.

        B.    Scope of the Covenant

Lumileds previously argued that the breach of contract claim should be stayed because resolving the merits of the claim would require a technical analysis of which products are properly classified as OMA products covered by the covenant not to sue. It now argues that the question of whether the products at issue before the ITC are covered by the covenant "does not require a detailed discussion of the '718 patent or LED technology" and can be resolved at this time on summary judgment.

Paragraph 4.2 of the 2004 settlement agreement resolving the 2002 and 2003 suits provides,

> Lumileds agrees not to sue for infringement of the

8

> Licensed Patents based exclusively on Epistar's current Omnidirectional Mirror Adhesive ("OMA") products that have the product numbers [listing fourteen specific product numbers] ("OMA Products"). This covenant does not apply expressly, by implication, estoppel, or otherwise, to any patent other than the Licensed Patents. This covenant also does not apply, expressly, by implication, estoppel, or otherwise to (1) any Epistar OMA product that is different unless such difference is insubstantial from the OMA Products defined above, regardless of whether such different OMA product is referred to by a product number or designation included in this paragraph . . . The parties agree for purposes of this Agreement that a change in any surface area of a chip of less than 20% or a change in bond pad area of less than 50% is permitted with regard to the OMA Products.

Scher Decl., Ex. 1 ¶ 4.2.

Lumileds argues that Epistar's interrogatory responses and Rule 30(b)(6) witness testimony in the 2002 and 2003 suits demonstrate that there are "substantial" or "significant" differences between the OMA products covered by the covenant not to sue and the OMA products at issue in the ITC action and the stayed 2005 suit.

However, as Epistar points out, there remain questions of fact with respect to the proper construction of term "insubstantial" as used in the 2004 settlement agreement. Lumileds argues that the term "insubstantially different" should be construed to exclude "any product that is 'significantly' different." Reply at 15. However, the fact that Epistar's witnesses have used the word "significant" to describe changes in the company's products is not enough to establish as a matter of law that the changes were not "insubstantial" as the word is used in the contract. The parties also dispute what information Lumileds had about Epistar's products at the time it entered into the 2004 settlement agreement and

9

therefore which products Lumileds considered Epistar's "current" OMA products for purposes of the agreement.

For the foregoing reasons, the Court denies Lumileds' motion for summary judgment. The breach of contract claim is stayed to be resolved along with the declaratory relief claim upon resolution of the ITC action.

## II. Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990). In considering a motion for judgment on the pleadings, the Court must accept the allegations of the non-moving party as true; the allegations of the moving party which have been denied are assumed to be false. Id.

Lumileds argues that it is entitled to judgment on the pleadings with respect to Epistar's three claims based on allegations that Lumileds sent letters that

> mislead [Epistar's] customers and potential customers into, inter alia, believing that the ITC has determined that all of Epistar's products infringe all of the patents that were at issue in the ITC, when in fact the ITC found that Epistar did not infringe two of the patents at issue and only six of EPistar's products were even considered by the ITC in the investigation. Hence, Lumileds' statements falsely suggest that Epistar is barred from importing any products into the United States and that the six products at issue infringe two patents they were

1    expressly found not to infringe.
2 Complaint ¶ 12.  Lumileds contends that the letters upon which
3 Epistar's claims are based are protected by the California
4 litigation privilege and federal patent law immunity for patent
5 assertions that are not "objectively baseless."  In the
6 alternative, Lumileds argues that the claims fail as a matter of
7 law.
8    Although the letters are not attached to the complaint,
9 Lumileds relies upon them and submits them with its motion.
10 Epistar argues that the Court should not consider any materials
11 outside of the pleadings in deciding the motion.  When deciding a
12 motion for judgment on the pleadings, the Court is generally
13 confined to consideration of the allegations in the pleadings.
14 However, as with a motion to dismiss, the Court may consider
15 documents "whose contents are alleged in a complaint and whose
16 authenticity no party questions, but which are not physically
17 attached to the pleading."  Branch v. Tunnell, 14 F.3d 449, 454
18 (9th Cir. 1994) (motion to dismiss); Dent v. Cox Commc'n Las Vegas,
19 Inc., 502 F.3d 1141, 1143 (9th Cir. 2007) (motion for judgment on
20 the pleadings).  Epistar does not contest the authenticity of the
21 letters, which it previously filed as evidence in related
22 litigation.
23    A.   Litigation Privilege
24    California Civil Code section 47(b) provides that
25 communications made in or related to judicial proceedings are
26 absolutely immune from tort liability.  The California Supreme
27 Court explains that the purpose of the privilege is "to afford

11

litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." Silberg v. Anderson, 50 Cal. 3d 205, 213 (1990). This Court has previously stated, "The litigation privilege applies to any communications (1) made in a judicial proceeding; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; (4) that have some connection or logical relation to the action." Sharper Image Corp. v. Target Corp., 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) (citing Silberg, 50 Cal. 3d at 212). Once these requirements are met, § 47(b) operates as an absolute privilege. Silberg, 50 Cal. 3d at 216. "Any doubt about whether the privilege applies is resolved in favor of applying it." Kashian v. Harriman, 98 Cal. App. 4th 892, 913 (2002).

The first prong of the litigation privilege test is quite broad. It covers "any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." Silberg, 50 Cal. 3d at 216. For purposes of the second prong, those non-litigants possessing a "substantial interest in the outcome of the litigation" are "authorized participants" for purposes of the litigation privilege. Costa v. Superior Court, 157 Cal. App. 3d 673, 678 (1984).

The California Supreme Court "has characterized the third prong of the foregoing [Silberg] test . . . as being 'simply part' of the fourth, the requirement that the communication be connected with, or have some logical relation to, the action." Rothman v.

12

Jackson, 49 Cal. App. 4th 1134, 1141 (1996) (citing Silberg). The "'connection or logical relation' which a communication must bear to litigation in order for the privilege to apply, is a functional connection," i.e., the communication must "function as a necessary or useful step in the litigation process and must serve its purposes." Id. at 1146 (emphasis omitted). The test "cannot be satisfied by communications which only serve interests that happen to parallel or complement a party's interests in the litigation," including vindication in the court of public opinion. Id. at 1147. Instead, the "connection or logical relation" prong of the test "can be satisfied only by communications which function intrinsically, and apart from any consideration of the speaker's intent, to advance a litigant's case." Id. 1148.

 Epistar contends that Lumileds' letters are not protected by the litigation privilege "because Lumileds did not intend to litigate against Epistar's customers." Opposition at 13. However, the litigation privilege "is not restricted to the parties in the lawsuit but need merely be connected or related to the proceedings." Adams v. Superior Court, 2 Cal. App. 4th 521, 529 (1992) (citing Profile Structures, Inc., v. Long Beach Bldg. Material Co., 181 Cal. App. 3d 437, 442 (1986)). Companies that purchased Epistar's products, incorporated them into their own and intended to import those products into the United States have a "substantial interest" in the ITC's ruling that certain Epistar products cannot be imported into the United States. Costa, 157 Cal. App. 3d at 678. Moreover, Epistar's discussion of specific requirements for applying the litigation privilege to pre-

13

litigation demand letters is misplaced. The litigation upon which Lumileds relies in arguing that its communications are protected by the privilege is the ITC proceeding, not the potential for future litigation against Epistar's customers.

Epistar next contends that its claims are based on "Lumileds' bad faith conduct, not its letter communications." Opposition at 15. However, the act of mailing letters to Epistar's customers without reference to the information communicated in those letters cannot support Epistar's claims. Epistar also argues that these unfair competition claims are based on "other activities" beyond the letters discussed above. Opposition at 8. However, the complaint simply alleges, "After the entry of the Final Determination in the ITC, Lumileds began, among other things, sending letters that are misleading . . ." Complaint ¶ 12. The complaint does not discuss any other action by Lumileds.

For the foregoing reasons, the Court finds that Lumileds' letters are protected by the litigation privilege and grants judgment on the pleadings with respect to Epistar's claims of California Business and Professions Code § 17200 unfair competition, and intentional interference with prospective economic advantage.

B. Federal patent law immunity

Lumileds argues that Epistar's unfair competition claim under § 43 of the Lanham Act also fails because Epistar has not alleged facts sufficient to establish that Lumileds acted in bad faith when it sent the letters discussed above. In Zenith Electronics Corp. v. Exzec, Inc., the Federal Circuit held that "before a patentee

14

may be held liable under § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith." 182 F.3d 1340, 1353 (Fed. Cir. 1999). In order to establish that Lumileds' letters were sent in bad faith, Epistar must demonstrate that the statements made in those letters were "objectively baseless." See GP Indus., Inc. v. Eran Indus., Inc., 500 F.3d 1369, 1375 (Fed. Cir. 2007); Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367, 1375 (Fed. Cir. 2004).

Although the ITC determined that "Epistar's family of MB, GB, and OMA LEDs infringe the asserted claims of the '718 patent," Epistar asserts that, at the time Lumileds sent out the letters at issue, Lumileds was aware that Epistar had developed a "design-around" product that did not infringe. Therefore Epistar contends that Lumileds' assertion that "all known versions of Epistar's OMA, MB, and GB AlGaInP LEDs infringe Philips Lumileds' '718 patent" was objectively baseless. Although Lumileds states that it was not previously aware of the press release in which Epistar announced the design-around product, Lumileds cited that press release in one of its counterclaims filed in this Court in December, 2007. Accepting Epistar's allegations as true, the Court finds that material issues of fact remain to be resolved. Therefore, the Court denies Lumileds' motion for judgment on the pleadings with respect to Epistar's claim for Lanham Act unfair competition. This claim is stayed to be decided along with the declaratory relief and breach of contract claims upon resolution of the ITC action.

15

CONCLUSION

For the foregoing reasons, the Court DENIES Lumileds' motion for summary judgment and GRANTS in part and DENIES in part its motion for judgment on the pleadings (Docket Nos. 54, 58).  The remaining claims are stayed pending the resolution of the ITC proceedings.

IT IS SO ORDERED.


Dated: 8/26/08            
                          CLAUDIA WILKEN
                          United States District Judge

16